Edward J. BROWN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 80 C 5620.

United States District Court,
N.D. Illinois, E.D.

Nov. 30, 1982.

John J. Jiganti, Harris, Burman, Sinars & Jiganti, Chicago, Ill., for plaintiff.

James K. Wilkens, Dept. of Justice, Washington, D.C., Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward J. Brown ("Brown") has sued the United States to recover taxes assessed and collected under Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672.[1] In response the United States filed a counterclaim against Brown and Wayne D. Ross ("Ross") for civil penalty assessments under Section 6672, and it now seeks summary judgment against Brown.[2] For the reasons stated in this memorandum opinion and order the United States' motion is granted in part and denied in part.

### Facts [3]

From 1967 to 1972 Brown was president, a director and owner of one-third of the voting stock of Marx Industrial Maintenance, Inc. ("MIMI"). Ross became MIMI's comptroller in late 1969 and a director in April 1970, serving in both capacities until sometime in 1971.

In April 1970 MIMI paid over $90,000 in delinquent 1969 employee withholding and social security (FICA) taxes. MIMI failed to make required payments of such taxes due for the second and third quarters of 1970 and for all of 1972. MIMI ceased business operations sometime in 1972, when all its corporate assets were sold and the net proceeds used to pay some of its delinquent federal withholding taxes.

In March 1978 the Internal Revenue Service ("IRS") assessed Brown $188,836.89 ($151,038.59 for the two 1970 quarters, and $37,798.30 for 1972) plus interest under Section 6672.[4] Contemporaneously IRS assessed Ross for the 1970 amount plus interest.

In May 1980 Brown paid IRS $607.18, the withholding tax due on his own wages from MIMI in 1972. In May 1980 Brown filed a claim for refund of his $607.18 payment plus interest. In July 1980 the IRS disallowed Brown's claim, and in October 1980 Brown sued to recover his payment. In turn the United States counterclaimed against Brown for $188,229.71 (the IRS assessment less Brown's payment) and against Ross for $151,038.59, in each case plus interest.[5] On May 18, 1982 Ross consented to entry of judgment against him in the full amount sought by the United States.

### Applicable Law

Section 6672 is obviously strong medicine. It was "designed to assure com-

---

1. All subsequent citations to the Code will simply take the form "Section—."

2. In April 1982 the United States moved for summary judgment against both Brown and Ross. Because Ross later consented to entry of judgment against him, only Brown's claim and the counterclaim against him are in issue here.

3. In substantial part this statement of facts is drawn from a "Statement of Uncontested Facts" filed by the parties as part of the Final Pretrial Order in the case (this Court's regular requirement before holding the final pretrial conference under Fed.R.Civ.P. ("Rule") 16). Other facts referred to in this section are drawn from the pleadings and from Brown's deposition. Statements of fact elsewhere in this opinion derive from the same sources.

4. At all times relevant to this action Section 6672 provided:

   Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

   Section 7202 provided for parallel criminal penalties, but that provision is not in issue here.

5. This pattern of a small payment and suit for refund, followed by a counterclaim for the much larger amount previously assessed by the United States, is the conventional means for bringing withholding tax litigation into the district courts (rather than the Tax Court, which would have jurisdiction if suit were brought to challenge a proposed deficiency).

pliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil . . . penalties for the employer's delinquency." *Slodov v. United States,* 436 U.S. 238, 247, 98 S.Ct. 1778, 1785, 56 L.Ed.2d 251 (1978). Imposition of personal liability on corporate officials is meant to counter the temptation to use the funds collected for corporate purposes. *Id.* at 243, 98 S.Ct. at 1783. Amounts withheld from employees' wages are, after all, taken from the employees' pockets to satisfy *their* taxes due the United States. When the United States automatically credits the employees' taxes with the withheld amount, the delinquent employer has converted government money.

Two avenues are potentially available for escape from Section 6672. They stem from its use of the terms "person" and "willfully."

■ First, Section 6671(b) provides a "person" subject to penalties under Section 6672 is a corporate officer or employee who "is under a duty to perform the act in respect of which the violation occurs." In other words, only a person who had the responsibility for collection and payment of the withheld taxes is liable under Section 6672. *Slodov,* 436 U.S. at 245, 98 S.Ct. at 1784; *Feist v. United States,* 607 F.2d 954, 957 (Ct.Cl.1979).

■ Second, a finding a corporate official acted "willfully" under Section 6672 requires a showing of personal fault. *Slodov,* 436 U.S. at 254, 98 S.Ct. at 1788; *Feist,* 607 F.2d at 962. Our Court of Appeals has held "willful" conduct denotes "intentional, knowing and voluntary acts" or "a reckless disregard for obvious or known risks." *Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Garsky v. United States,* 600 F.2d 86, 91 (7th Cir. 1979). Mere negligence is not sufficient to constitute "willfulness." *Feist,* 607 F.2d at 961. But at the same time the government need not show either (1) bad motive—the specific intent to defraud it or deprive it of

revenue—or relatedly (2) the absence of reasonable cause or a justifiable excuse. *Monday,* 421 F.2d at 1216.

In opposing the summary judgment motion, Brown is entitled to all reasonable inferences in his favor from the facts of record, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), including facts contained in the United States' submissions, *see Thornton v. Evans,* 692 F.2d 1064 at 1074 (7th Cir.1982). Granting Brown all the favorable inferences due, this Court finds there is no genuine issue of fact material to Brown's liability for the two 1970 quarters, but there is such an issue as to the year 1972. Each will be discussed in turn.

### Brown's Liability

Brown's own deposition (see references at United States Mem. 5–7) concedes the many facts that establish conclusively Brown was a "responsible person" for purposes of Section 6672 liability throughout the 1970 and 1972 periods. Those facts track the checklist of determinative factors endorsed by our Court of Appeals. *Monday,* 421 F.2d at 1214–15, *citing Datlof v. United States,* 252 F.Supp. 11, 32–33 (E.D.Pa.), *aff'd,* 370 F.2d 655 (3d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967).

Indeed Brown himself does not challenge his being a "responsible person" (Ans. Mem. 6). Brown's argument goes rather to his alleged lack of willfulness, and that argument takes different forms in relation to MIMI's 1970 and 1972 delinquencies.

#### 1. *1970 Delinquencies*

Brown argues his "lack of willfulness stems from his lack of knowledge that the taxes in question were not *ultimately* being paid" (Ans. Mem. 10, emphasis added; see also *id.* at 4–5) in 1970. Brown has to insert the qualifying adverb because he has admitted he knew the withheld taxes were being paid at least 30 days late throughout 1970. Dep. 67–70, 74, 85–86, 132, 142; Ans. Mem. 4.

In other words, Brown contends he lacked knowledge of the *extent* or "seriousness" of MIMI's delinquency, and he argues now (Ans. Mem. 10) his "mistake" as to the extent of that liability shows he lacked the requisite willfulness under Section 6672. In Brown's view a four-week level of delinquency (scarcely chicken feed, for his own testimony refers to $73–83,000 owing the government, Dep. 74) "was acceptable," Dep. 68.

Even if Brown's version of the facts is simply taken as true, however, he clearly acted willfully for Section 6672 purposes. As already stated, in April 1970 MIMI had raised new capital to pay a $90,000 withholding tax delinquency for 1969, and Brown has confirmed he was fully aware of MIMI's history of not paying such federal taxes. Dep. 66, 92–93, 98. When that admitted awareness extended to the continuous delinquencies throughout 1970—confirmed by his review of monthly balance sheets (Dep. 70, 74, 86)—it is clear Brown had the knowledge necessary as an ingredient of willfulness. Despite that knowledge Brown continued in 1970 to pay various MIMI creditors in preference to the United States. Statement of Uncontested Facts ¶ 11. On the facts Brown's case is thus indistinguishable from the situation described in *Garsky*, 600 F.2d at 91 (citations omitted):

> The willfulness requirement of Section 6672 is satisfied if the responsible person acts with a reckless disregard of a known risk that the trust funds may not be remitted to the Government such as by failing to correct mismanagement after being notified that the withholding taxes have not been duly remitted . . . A responsible person's use of funds, or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax, is willful conduct within the scope of

Section 6672 . . . Taxpayer acknowledges that this is precisely the situation in which he finds himself.

In short, Brown had notice of MIMI's past delinquencies and at least of the monthly deficiencies throughout the two 1970 quarters at issue. It is entirely irrelevant that he may not have known just how large the deficiencies were. As an admittedly "responsible" corporate official he had a duty to assure withholding and FICA taxes were actually paid as required. Brown simply failed to discharge his duty.[6] *See Garsky*, 600 F.2d at 91. Brown's own version of the facts establishes his 1970 willfulness in Section 6672 terms. At a minimum he was reckless in his disregard of the known risk MIMI's taxes were not being paid as required.

### 2. *1972 Delinquencies*

About April 1971 an outside audit revealed the full extent of MIMI's 1970 tax delinquencies. Statement of Uncontested Facts ¶ 13. Shocked at the amount involved—far greater than the "about four weeks behind" he had thought—Brown blew the whistle by going to the IRS to tell them of the debt due. Dep. 163.

From that time forward the IRS was literally on the inside of MIMI's operations, and literally so on a daily basis. One of its IRS Agents was given an office and a desk in MIMI's offices, "establishing a pattern of payment so that we could hopefully survive and pay off the debt we didn't know existed" (Brown Dep. 233). "We were living with an IRS agent" (*id.* at 173), and Brown understood the large payments of withholding taxes being made under the agent's scrutiny were covering all *current* quarters in full, as well as paying a small amount toward the old delinquent taxes (*id.* at 171–72, 174, 250–51).[7] That situation continued

6. Brown could not effectively delegate his duty as he contends (Ans. Mem. 4, 10–11) he could. Such a concept would gut Section 6672 by allowing admittedly responsible persons to escape liability by "mere delegation." *See Mazo v. United States,* 591 F.2d 1151, 1155, 1157 (5th

Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

7. Only a fragmented version of the 1972 picture has been provided the Court. It has to infer from questions put to Brown (Dep. 243–44) that the government chose to apply the pay-

for the rest of 1971 and all of 1972, until MIMI's assets were sold to American Airlines (also with IRS approval, *id.* at 35–36), with the net proceeds of sale being paid to the IRS (*id.*).

Brown argues (Ans. Mem. 12) those facts should estop the government from asserting his willfulness after April 1971. Estoppel against the government poses a terribly difficult burden, though,[8] and one it is unnecessary for Brown to shoulder.

With the requisite reasonable favorable inferences drawn in Brown's favor, there are at least genuine issues of material fact as to Brown's willfulness as to the 1972 quarters for which the government has asserted a claim. There has really been no showing at all that Brown knew of any non-payment of taxes for those quarters, or that his understanding they were being paid was "a reckless disregard for obvious or known risks."[9] In fact there is a serious question whether another requisite element of Section 6672 liability has been satisfied: a showing that other creditors were paid in preference to the United States.[10]

Indeed it is an understatement to characterize the record as posing genuine issues of fact to forestall summary judgment in the United States' favor. Its factual treatment. of the 1972 "willfulness" issues has been almost nonexistent, and its legal treatment of those issues has been at most perfunctory (R. Mem. 6). This Court has made the point elsewhere that a party may not hold

back on a motion for summary judgment, planning to give the matter its best shot afterward if it is unsuccessful.[11] Given the present procedural posture, however, this Court can only deny the 1972 aspect of the United States' motion.

*Conclusion*

There is no genuine issue of fact material to Brown's liability for the Section 6672 assessments covering the second and third quarters of 1970. Accordingly the United States is granted summary judgment in the amount of $151,038.59 plus interest as allowed by law. Summary judgment is denied as to the Section 6672 assessments made for 1972. This Court will await submissions from the parties before the next status date as to a possible Fed.R.Civ.P. 54(b) determination as to the 1970 judgment and the appropriate next step as to the 1972 dispute.

ments differently, leaving Brown exposed to the claimed liability. That would pose a number of unanswered (rather entirely unaddressed) questions, which need *not* be dealt with in light of the government's failure on other grounds dealt with in the text.

**8.** *Cf. Pratte v. NLRB,* 683 F.2d 1038, 1041–44 (7th Cir.1982), *vacating* this Court's judgment, 530 F.Supp. 461 (N.D.Ill.1981).

**9.** In 1972 Brown had a cancer operation and other personal difficulties, so that a new MIMI president came in and was "reporting directly to" the IRS Agent ensconced in the MIMI offices (Dep. 101–02). That too (with or without favorable inferences) creates a fact question as to the extent of Brown's knowledge (and hence willfulness).

**10.** As already indicated, the parties stipulated to that having been done in *1970* (Statement of Uncontested Facts ¶ 11), but they were wholly silent as to 1972. This Court's search of the record (the government not having done its job in its memoranda) disclosed nothing in this respect, other than an inference from one Brown deposition answer that after the sale of assets the entire proceeds "less the accounts payable" went to the IRS. And given the uncontroverted IRS approval of the sale and of the distribution of the proceeds, Brown's "willfulness" is scarcely a compelled inference (even apart from estoppel notions).

**11.** *See Kadish v. Commodity Futures Trading Commission,* No. 82 C 3331, slip op. at 2 n. 1 (N.D.Ill. Nov. 15, 1982); *W.H. Brady Co. v. Lem Products, Inc.,* 521 F.Supp. 676, 678 (N.D. Ill.1981).