**In the Matter of Kenneth W. FOGELBERG, Steven D. Horowitz, Debtors.**

**Bankruptcy Nos. 81 B 7255, 81 B 5870.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 31, 1986.

Frank Stepnowski, William Needler & Associates, Chicago, Ill., for Fogelberg and Horowitz.

John Lortie, Sp. Asst. U.S. Atty., Chicago, Ill., Gerard A. Brost, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Melanie Cohen, Anotonow & Fink, Chicago, Ill., for Estates.

## FINDINGS OF FACT

## AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER,
Bankruptcy Judge.

This cause having come on for trial, consolidated on all claims of the United States against Debtors Fogelberg and Horowitz, the Court having admitted and considered evidence and both sides having rested, argument of counsel being heard and considered, now therefore the Court does make and enter the following Findings of Fact and Conclusions of Law, and judgment order thereon is separately entered this date.

### Introduction

This matter arises out of jointly consolidated Chapter 11 cases filed in 1981. The Plans of Reorganization were confirmed in 1984. The United States Internal Revenue Service ("IRS") filed various claims against each of the Debtors. Debtors, Kenneth Fogelberg and Steven Horowitz, objected to those claims.

The IRS claimed taxes due and owing from each said Debtor in the amount of $7,500.00 for unpaid partnership liabilities of Pratt Avenue Partnership. However, the United States has conceded that $7,500 claim and it is disallowed.

The claim also alleges a 100% penalty under Section 6672 of the Internal Revenue Code against Fogelberg and Horowitz for unpaid social security (FICA) and income taxes withheld from the wages of the employees of Manageers, Inc. for periods ending September 30, 1979 through June 30, 1980 in the amount of $36,160.64.

In addition, a 100% penalty under Section 6672 of the Internal Revenue Code was claimed against Fogelberg and Horowitz for unpaid social security (FICA) and income taxes withheld from the wage of the employees of Marken Real Estate and Management Co. for periods ending June 30, 1979 through June 30, 1980 in the amount of $102,139.88.

A claim was also made against Fogelberg and Horowitz for unpaid partnership liabilities for 6320 North Kenmore Partnership for employment taxes in the amount of $23,529.91.

Debtor Stuart Kaiserman was also assessed the above stated liabilities, but that assessment was abated by the IRS.

Steve Wolf ("Wolf"), and Paul Wildman ("Wildman") were also assessed the above set forth liabilities, but have chosen not to object to the United States' claims for taxes.

There were also personal income tax assessments against Fogelberg which were not assessed against Horowitz; Fogelberg did not contest or object to those, and they are allowed.

## FINDINGS OF FACT

1. The claims fall into five categories: (1) personal income tax; (2) tax resulting from the Pratt Avenue Associates Partnership; (3) tax resulting from the 6320 North Kenmore Partnership; (4) income taxes and social security withheld from the wages of the employees of Manageers, Inc. and not paid over to the United States; and (5) income and social security taxes withheld from the wages of the employees of Marken Real Estate and Management Corp. and not paid over to the United States.

Fogelberg does not contest the following claims against him resulting from personal income tax due from him; such taxes are due and the claims therefor are allowed in full as follows:

| Tax Year | Tax | Interest to date of Filing Bankruptcy Petition |
|---|---|---|
| 1978 | $ 647.00 | $ 142.90 |
| 1979 | 6,271.00 | 896.28 |
| 1980 | 11,668.00 | 241.67 |
| Totals | $18,586.00 | $1,280.85 |

3. The United States has conceded that the $7,500 amount claimed resulting from the Pratt Avenue Apartment Associates Partnership is not due, and that is disallowed.

4. The IRS also assessed a total $23,-529.91 against the Debtors resulting from the unpaid withholding taxes of 6320 North Kenmore Partnership.

5. The Internal Revenue Service also claimed $102,139.88 for failure to pay over the withholding taxes withheld from the wages of the employees of Marken Real Estate and Management Corp. for periods ending June 30, 1979 through June 30, 1980. No interest is claimed thereon.

6. The Internal Revenue Service also claimed $36,160.64 for the unpaid social security and income taxes withheld from wages of employees of Manageers, Inc. for periods ending September 30, 1979 through June 30, 1980. No interest is claimed thereon.

7. Kenneth Fogelberg ("Fogelberg") and Steven Horowitz ("Horowitz") were general partners of the 6320 North Kenmore Avenue Partnership.

8. Fogelberg was the incorporator and the director of Marken Real Estate and Management Corp. ("Marken").

9. Fogelberg and Horowitz were equal shareholders of Marken and Manageers.

10. In 1971, Fogelberg along with Wolf formed "Marken Real Estate & Management Corp." ("Marken"). Both were shareholders, officers and directors of Marken. Later, Horowitz and Wildman joined the corporation and participated as shareholders, officers, and management employees. The company owned certain parcels of real estate and was engaged in real estate management.

11. In 1976, Marken bought another real estate management company "Hogan and Farwell" and changed its name to "Hogan and Farwell/Marken Realty Group, Ltd.". The company continued to do business as both Marken Real Estate and Management Company and under its new name. These were not two different corporations, but one corporation with two names.

12. After 1976, Stuart Kaiserman ("Kaiserman") became an officer of the new corporation. Manageers, Inc. was included as a wholly-owned subsidiary of Hogan and Farwell. After the 1976 purchase of Hogan and Farwell, the controlling officers and directors of Marken as well as Manageers, Inc. were Fogelberg, Wolf, Horowitz, Kaiserman and Wildman. Manageers was located in Lisle, Illinois and Mr. Robert Galgan was the manager of Manageers during the periods in question. Mr. Galgan reported regularly to the aforesaid five principals.

13. Manageers, Inc. was directed from the corporate headquarters of Marken located at 3500 West Devon, Chicago, Illinois.

14. All the five principals, including Fogelberg and Horowitz, shared the responsibility for directing and administering day-to-day operations of the corporations. Although each principal had his own area of expertise, and direction, they all had regular weekly meetings together to discuss and agree to overall operations of the two corporations.

15. Paul Wildman was generally responsible for supervising the bookkeepers of Marken and Manageers. It was he who first knew of the unpaid withholding tax liability of those corporations as those obligations accrued. He knew that the taxes were unpaid at the time they fell due and he reported this knowledge to all the other officers and directors of the two companies at their weekly meetings. Fogelberg and Horowitz were present at those meetings, and thereby learned from Wildman that Marken and Manageers owed to the IRS unpaid withholding tax liabilities that were steadily growing larger.

16. Fogelberg was a director of Marken and Manageers, Inc. and Horowitz was the president of the two companies. Each of

them had the authority and exercised that authority to hire and fire employees. Both Fogelberg and Horowitz signed for and approved loans on behalf of those two corporations. Both had the authority to sign checks on behalf of the corporations and both exercised that authority to sign checks and thereby pay creditors and employees' payroll checks. Although each generally signed checks only to provide for bills in their area of expertise and direction, on occasion they would sign other checks as a matter of convenience. They exercised their authority to sign checks although they knew that the corporations had unpaid tax liability. With their knowledge and consent, operational expenses and salaries were paid so as to keep the two companies operating, instead of paying the withholding taxes due or any part thereof.

17. Fogelberg and Horowitz had the authority and exercised that authority to bind those two corporations to contracts without the consent of the other principals.

18. Fogelberg and Horowitz participated in most of the weekly meetings with the other principals involved with Marken and Manageers in which the finances of Marken and Manageers were discussed.

19. The unpaid withholding tax obligations were routinely discussed at the weekly meetings in which Fogelberg and Horowitz participated.

20. At their weekly meetings the principals of Marken and Manageers, including Fogelberg and Horowitz, decided which creditors would be paid and which creditors would not be paid.

21. The principals of the two corporations, including Fogelberg and Horowitz, decided that they would not pay over the employees' withholding taxes of Marken and Manageers, preferring to use those funds to pay other creditors and employees of the corporations.

22. In mid–1979 a revenue officer visited the premises of Marken to discuss the unpaid tax liabilities of the corporation. Both Horowitz and Fogelberg knew of this visit at the time of its occurrence.

23. Fogelberg and Horowitz maintain that they were not aware of the withholding tax liabilities of the corporations until late 1979 or early 1980 at which time the withholding tax liabilities were around $100,000. However, the Court finds that they knew of those liabilities as they first came due but were unpaid and were aware as the total due grew each reporting period.

24. The corporations held numerous bank accounts for different buildings which they managed, and Fogelberg and Horowitz were signatories on all accounts.

25. Monies were frequently transferred between the various accounts and the various business entities by the principals including Fogelberg and Horowitz to pay for obligations they deemed necessary.

26. The payroll checks were all issued from a central Marken account in which both Fogelberg and Horowitz were signatories.

27. After they knew of the unpaid withholding taxes, Fogelberg and Horowitz procured loans on behalf of the Marken corporation for amounts well in excess of the withholding tax liabilities.

28. Despite their knowledge that withholding taxes were unpaid for Marken and Manageers, Fogelberg and Horowitz continued to sign checks and pay over and permit to be paid funds of the two corporations to creditors and employees in preference to the United States' withholding tax obligations.

29. By their letters of direction, Debtors designated certain payments be applied to the trust fund portion of the withholding tax obligations. The Internal Revenue Service applied those payments in accordance with the designations, by Debtors, and they received proper credits in accordance therewith.

30. (a) The Internal Revenue Service estimated the assertedly unpaid tax liabilities incurred by the 6320 North Kenmore Partnership for the periods involved under Section 6020(b) of the Internal Revenue Code.

(b) That assessment was based wholly on surmise that said Partnership had employees from whose salaries there were withholdings. However, this Court finds that the said partnership had no employees during the periods assessed; therefore, no withholding taxes were due and owing to the United States by reason thereof.

## CONCLUSIONS OF LAW

1. (a) This Court has core jurisdiction to adjudicate claims against the estate under 28 U.S.C. Section 157(b).

 (b) Under Bankruptcy Rule 301(b), the IRS Proofs of Claim filed herein constituted *prima facie* evidence of the amount and validity of its claims. The claims included therein were presumed valid and established in all respects until evidence was introduced sufficient to rebut the *prima facie* case made by the filing thereof. *In re Breezewood Acres, Inc.*, 28 B.R. 32, 34 (Bankr.M.D.Pa.1982); *Bitner v. Borne Chemical Co., Inc.* (*In re Borne Chemical Co., Inc.*), 16 B.R. 509, 513 (Bankr.N.J.1980). Once objectors presented evidence rebutting Claimant's *prima facie* case of validity and amount of claim, however, claimant had the burden of proving the claim. *In re Fisher Holding Company, Inc.*, 12 B.R. 193, 195 (Bankr.S.D. Ind.1981).

(c) In this case, the burden of establishing that a person is not liable for the taxes assessed against him rests with the taxpayer. *See Sinder v. United States*, 655 F.2d 729 (6th Cir.1981); *Bernardi v. United States*, 507 F.2d 682 (7th Cir.1974) (per curiam); *United States v. Rexach*, 482 F.2d 10 (1st Cir.1973); *Liddon v. United States*, 448 F.2d 509 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Psaty v. United States*, 442 F.2d 1154 (3d Cir.1971); *Lesser v. United States*, 368 F.2d 306 (2d Cir.1966).

 2. Section 6672(a) of the Internal Revenue Code provides:

(a) *General Rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under Section 6653 for any offense to which this section is applicable.

3. Fogelberg and Horowitz exercised financial control over Manageers and Marken; they signed payroll checks and paid creditors on behalf of the corporations; Fogelberg was a director, Horowitz the president of the corporations; they participated in regular meetings regarding the corporations' financial operations; they took out loans on behalf of the entities and in general they were "high corporate officials charged with general control over corporate business affairs who participated in decisions concerning payment of creditors and disbursal of funds" and, therefore, were responsible persons under Section 6672 of the Internal Revenue Code. *Haffa v. United States*, 516 F.2d 931 (7th Cir. 1975); *Monday v. U.S.*, 421 F.2d 1210, 1214–1215 (7th Cir.1970); *Brown v. U.S.*, 552 F.Supp. 662 (N.D.Ill.1982).

4. More than one person can be responsible persons under Section 6672. Here, for both Marken and Manageers, both Horowitz and Fogelberg were among those responsible for collecting, accounting for, and paying over the withheld taxes of the corporation. *Harrington v. U.S.*, 504 F.2d 1306 (1st Cir.1974); *Newsome v. U.S.*, 431 F.2d 742, 746 (5th Cir.1970).

5. A responsible person must have "significant" rather than exclusive control over the disbursal of funds. Both Fogelberg and Horowitz had significant decision making authority over the disbursal of corporate funds for both Manageers and Marken; hence, they are responsible persons of both those corporations. *Adams v. U.S.*, 504 F.2d 73 (7th Cir.1974).

6. Additionally, as Fogelberg and Horowitz were responsible persons of the two corporations, they could not and cannot delegate that responsibility to Paul Wildman or others in the corporation. *Har-*

*rington v. U.S., supra.* "Such a concept would gut Section 6672 by allowing admittedly responsible persons to escape liability by 'mere delegation'." *Brown*, 552 F.Supp. at 665 n. 6.

7. Fogelberg and Horowitz knew about the liability from Paul Wildman as it accrued and despite this knowledge, voluntarily and intentionally paid other creditors and caused other creditors and employees to be paid in preference to the United States. Thus, their failure to pay the withholding taxes was willful. *See Monday v. U.S., supra.*

8. Debtors also acted willfully in that they were aware that a revenue officer visited the corporate headquarters in mid-1979 to discuss the unpaid withholding taxes. Despite that knowledge Debtors made payments to other creditors instead of paying the IRS. That evidences their reckless disregard as to whether the federal withholding taxes would be paid, and their failure to pay was thereby again shown to be willful. *Monday v. U.S., supra.*

9. Fogelberg and Horowitz knew since the beginning of 1979 that the corporations were having severe financial problems; they had regular meetings regarding those problems; lists of accounts payable were provided to them which included the unpaid withholding taxes; they sought loans to salvage the company; but still they failed to pay over the corporations withholding taxes from the two corporations, or any part thereof. As responsible corporate officials, they had a duty to assure the taxes were actually paid as required. They simply failed to discharge their duties. *See Brown*, 552 F.Supp. at 665. They thereby acted with at least reckless disregard as to whether the employment taxes would be paid and, therefore, willfully failed to pay those taxes under *Monday v. U.S., supra.*

10. Debtors testified that they only discovered the tax liabilities in late 1979 after those liabilities amounted to about $100,-000. That testimony was not found credible. However, even if that had been the fact, they still willfully paid other creditors and took out loans in excess of the tax liabilities to pay corporate obligations after late 1979. It is entirely irrelevant that they may not have known just how large the tax deficiencies were. *Brown*, 552 F.Supp. at 665. Indeed, the total withholding obligations grew thereafter to over $138,000 where it now stands for the two companies. Thus, their failure to pay over any withholding taxes after late 1979 was itself willful.

11. Even had Debtors truly discovered the withholding tax obligations in late 1979 when the amount due approximated $100,000 which they could not immediately pay in full, that would not relieve them from liability. They continued in business until at least mid-1980, paying creditors and salaried employees as well as commissions, and they took out loans on behalf of the corporation during that period. A responsible person's use of funds thereby, or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax, is willful conduct under Section 6672. *Garsky v. U.S.*, 600 F.2d 86, 91 (7th Cir.1979); *Anderson v. U.S.*, 561 F.2d 162, 166 (8th Cir.1977).

12. Debtor contended that the IRS administratively decided that Kaiserman was not a responsible person and his assessment was abated. They argue that the assessments against Fogelberg and Horowitz must also be abated as they were similarly situated. That is without merit. First, Debtors failed to call the knowledgeable IRS agent responsible who was available to be subpoenaed. Therefore, they offered no evidence as to the reason that Kaiserman's assessment was abated. Second, Section 6672 imposes joint and several liability, and "the existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility". *Monday v. U.S.*, 421 F.2d at 1214. *See also Sinder v. U.S.*, 655 F.2d 729 (6th Cir.1981).

13. Section 6020(b) of the Internal Revenue Code allows the IRS to estimate reasonably the tax liability of the 6320 Kenmore Partnership, with the burden on the taxpayer to show such estimate was erroneous. That burden has been met, the Court having found that this Partnership had no employees during the periods in-

volved, and that there were in fact no withholdings. Accordingly, the Government's claim in connection therewith is disallowed.

14. The Court's remarks at the conclusion of trial will stand as additional Findings of Fact and Conclusions of Law.

### CONCLUSION

Wherefore and by reason of the foregoing, by separate order judgment will enter allowing the following IRS claims on behalf of the United States jointly and severally against Fogelberg and Horowitz:

(a) $102,139.88 without interest for withholding taxes pertaining to Marken Real Estate and Management Corp.

(b) $36,160.64 without interest for withholding taxes pertaining to Managers, Inc.

and further allowing all income tax claims assessed against Fogelberg, with interest to date of filing of his bankruptcy petition; but disallowing all other IRS claims filed by it against Debtors Fogelberg and Horowitz.