**UNITED STATES of America**

**v.**

**Basil VESPE, David L. Padrutt and Alex Fein, a/k/a Alex Feinman.**

**Appeal of Basil VESPE.**

**No. 88–5135.**

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1988.

Decided Feb. 28, 1989.

**1330**

Michael T. Grimes (argued), Grimes & Grimes, Philadelphia, Pa., for appellant.

Howard M. Solomon (argued), Jonathan S. Cohen, Gary R. Allen, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Jerome L. Merin, U.S. Atty's. Office, Newark, N.J., for appellee U.S.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Section 6672 of the Internal Revenue Code permits the government to collect from a "responsible" person who willfully fails to pay employment taxes an amount equal to the unpaid taxes. 26 U.S.C.A. § 6672 (West Supp.1988). The government assessed Basil Vespe under this provision for the unpaid employment taxes of Vespe the Versatile/Southern Division, Inc. (Vespe the Versatile) for the second quarter of 1975 through the second quarter of 1976, and the unpaid employment taxes of Environmental Contracting Corporation (Environmental) for the fourth quarter of 1976, the first, third and fourth quarters of 1977, and the first quarter of 1978. It filed this action to reduce that assessment to judgment. A jury found that Vespe was not liable for any of the taxes of Environmental nor those of Vespe the Versatile for the second quarter of 1975, but found him liable for the taxes of Vespe the Versatile for the remaining quarters at issue.

Both Vespe and the government moved for judgment notwithstanding the verdict as to those quarters on which they had not prevailed. Vespe also moved, in the alternative, for a new trial based on claimed trial errors. Vespe subsequently sought to have the district court recuse itself from hearing any post-trial motions. The district court denied Vespe's motions and granted the government's motion. Vespe now appeals. For the reasons which follow, we will reverse the order of the district court granting judgment notwithstanding the verdict as to Vespe's liability for the unpaid taxes of Environmental and will in all other respects affirm.

### I.

Vespe was president of Vespe Contracting Company (VCC), a cement contracting and construction company. In 1974, Conforte and Eisele (C & E), a general contractor, engaged VCC to perform work at a building site in Washington, D.C. To avoid the possibility of mechanics' liens, VCC and C & E agreed that checks would be issued jointly to VCC and the creditor. Vespe the Versatile, which actually performed the work, submitted a monthly list of suppliers and creditors who needed to be paid and C & E then issued checks, up to the amount of the progress payments then due, payable to the creditor and VCC. C & E also issued a weekly check for the payment of Vespe the Versatile's employees. In November, 1975, a dispute arose as to the payment process. When there was no satisfactory resolution, Vespe the Versatile left the job. Soon thereafter the company became inactive.

Environmental was formed in 1975 or 1976 to perform cement contracting work for water and sewage treatment plants and frequently used a joint checking system in its relationships with general contractors. During the first quarter of 1978, a dispute arose as to the continuation of this procedure on a project in Key West, Florida. Environmental was fired from the job and soon became inactive.

The Internal Revenue Service made assessments against Vespe and Alex Fein, a/k/a Alex Feinman, the president of Vespe the Versatile, for the unpaid employment taxes of that company and against Vespe and David Padrutt, the treasurer of Environmental, for the unpaid employment taxes of Environmental. The government

then instituted this action in the United States District Court for the District of New Jersey to reduce the assessments to judgment. Default judgments were entered against Fein and Padrutt, and the claim against Vespe was tried before a jury.

At trial, Vespe argued that he was not a responsible person of either company, since he was not an officer in them and was not involved in their administration. He also argued that any failure to pay taxes was not willful, claiming that the general contractors controlled the funds available to each company through the joint checking systems. Finally, he introduced evidence that in the summer of 1975 he was hospitalized for approximately three months from severe burns suffered in a boating accident and that he was subsequently incarcerated. Thus, he maintained, he could not have acted willfully or been a responsible person during those periods.

On October 16, 1987, just prior to the submission of the case to the jury, the government's attorney informed the district court that a witness who had testified the previous day claimed Vespe had physically threatened him outside the courtroom. After charging the jury, the court instructed the government to produce the witness and also invited the United States Attorney's Office to conduct, or assist in conducting, an investigation. This invitation was declined and the district court held a hearing later that day on the alleged incident.

The jury thereafter returned its verdict. In response to special interrogatories, it found that Vespe was a responsible person for both companies for all quarters in dispute. It also determined that he had willfully failed to pay the taxes of Vespe the Versatile for the third quarter of 1975 through the second quarter of 1976 and was therefore liable for that period. Since the jury concluded that he did not willfully fail to pay the taxes of Vespe the Versatile for the second quarter of 1975 or the taxes of Environmental for any quarter, it did not hold him liable for those delinquencies.

Vespe challenges the district court's decision to grant the government's motion for judgment n.o.v. and to deny his. He also asserts that the district court erred in not recusing itself and in denying his alternative motion for a new trial. We have appellate jurisdiction over the district court's final orders on the parties' cross-motions for judgment n.o.v. and in the alternative denying Vespe a new trial under 28 U.S.C.A. § 1291 (West Supp.1988). We apply the same standard as the district court in determining whether judgment n.o.v. should have been granted. *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 113 (3d Cir.), *cert. denied*, ___ U.S. ___, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). We review the court's decision not to recuse itself for abuse of discretion, *Johnson v. Trueblood*, 629 F.2d 287, 290 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981), and review its evidentiary rulings and conduct of the trial by the same standard.

## II.

Vespe first argues that he is entitled to judgment n.o.v. on the question of whether he is a responsible person of Vespe the Versatile. An assessment by the government is presumptively correct and where, as here, it is introduced into evidence, the burden shifts to the defendant to show that he was either not a responsible person or did not act willfully. *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971). Vespe thus asks us to enter judgment n.o.v. in his favor on an issue on which he bore the burden of proof, a remedy "reserved for extreme circumstances." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). His motion may only be granted if the record shows he was not a responsible person so clearly that no rational jury could find to the contrary. *EEOC v. Delaware Dep't of Health and Social Servs.*, 865 F.2d 1408, 1414 (3d Cir.1989). In determining whether this standard has been met, we must view the evidence in the light most favorable to the government as the verdict winner and accord it the benefit of all justifi-

able inferences. *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 259 (3d Cir.1987), cert. denied, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

Section 6672 imposes liability on "[a]ny person required to collect, truthfully account for, and pay over" taxes who willfully fails to do so.[1] In order to fall within this statutory language and thereby qualify as a responsible person, the individual must have significant, though not necessarily exclusive, control over the employer's finances. *Purdy Co. of Illinois v. United States*, 814 F.2d 1183, 1188 (7th Cir.1987); *Commonwealth Nat'l Bank of Dallas v. United States*, 665 F.2d 743, 757 (5th Cir. 1982). More than one individual may be a responsible eprson for a given employer. *Commonwealth Nat'l Bank of Dallas*, 665 F.2d at 757.

In attacking the jury's finding, Vespe relies on the testimony of Richard D. Laxton, who was a vice-president of Vespe the Versatile. Laxton stated that he signed most of the company's checks, "pretty much" determined when bills would be paid and negotiated most of the contracts. He also testified that he and Fein had the authority to sign the company's tax returns, that they ran the company's day-to-day operations and that Fein was responsible for signing the payroll checks.

Vespe also presented various documents which tend to support his non-involvement with the company. He introduced requests to C & E for payment pursuant to the joint checking system, all of which were signed by Laxton. He also submitted a corporate resolution designating a Washington, D.C. bank as a depository which lists the corporate officers and does not mention him. Since, Vespe argues, no documents reveal his involvement with the company and since Laxton testified that others handled its affairs, the jury was obligated to find in his favor.

The government, however, countered with significant evidence of Vespe's participation in Vespe the Versatile. VCC, Vespe the Versatile and Environmental all operated out of the same building. David Padrutt, the former treasurer of Environmental who testified by way of deposition, stated that the companies operating from that address involved the same group of people and that "Basil Vespe was in charge of whatever work we were doing, whatever we were doing out of that set of offices Basil was in charge of it." Appendix (App.) at a313. He also stated that he sometimes spoke with Vespe about the need to pay certain creditors, *id.* at a353–54, that Vespe would decide which creditors would be paid, *id.* at a354, a384, and that Vespe exercised control over who would be hired or fired. *Id.* at a376–77.

Given the inference from Padrutt's testimony that he worked for the other Vespe-related organizations in the building besides Environmental, *see id.* at a312, a330, and his interactions with people who worked for these various businesses, he had a legitimate basis for stating that

---

**1.** 26 U.S.C.A. § 6672 provides, in pertinent part:

(a) *General rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. This section applies only to taxes "which *require collection,* that is, third-party taxes." *Slodov v. United States*, 436 U.S. 238, 249, 98 S.Ct. 1778, 1786, 56 L.Ed.2d 251 (1978) (emphasis in original).

Here, the government seeks to recover the employees' share of Federal Insurance Contribution Act taxes and withheld taxes from income which the corporations were required to deduct from their employees' wages. 26 U.S.C.A. §§ 3102 and 3402 (West 1979 & Supp.1988). These withheld amounts are "deemed to be a 'special fund in trust for the United States.'" *Slodov*, 436 U.S. at 243, 98 S.Ct. at 1783 (quoting 26 U.S.C. § 7501(a)). Once net wages are paid to an employee, he is credited with having paid the withheld taxes and if the employer fails to remit them the government's sole remedy is against the employer. *Id.* One means of collecting the unpaid amounts is, as here, an action against a responsible person under section 6672. *Id.* at 244–45, 98 S.Ct. at 1783–84.

Vespe controlled all the companies in the building. Thus, although his testimony as to Vespe's method of operation was not specific to Vespe the Versatile, the jury could have properly found it applicable to that company. Padrutt's statement that Vespe ran Environmental regardless of whether his name appeared on any documents involving the company, *see id.* at a369–70, a377, provided another basis for the jury's rejection of Vespe's argument that the lack of documents linking him to Vespe the Versatile proved he was not involved with the company. In addition, Laxton admitted that in an arbitration hearing he testified to Vespe's ownership of Vespe the Versatile. *Id.* at a246.

The testimony of Flavio Franco, a C & E vice-president who was responsible for the project in Washington, D.C., also points to Vespe's influence over Vespe the Versatile. Franco testified that when payment disputes arose one of the persons he would speak to would be Vespe. In particular, Franco related an incident which occurred in November, 1975, after he had been informed that VCC was delinquent in its tax obligations to Maryland and possibly the IRS. He stated that requests in excess of the progress payment then due had been submitted, and that he drew up joint checks for the taxing authorities and for other creditors on the list up to the amount of the progress payment. *Id.* at a417. In doing so, he refused to draw requested checks

for what he described as Vespe's "captive corporations"—Vespe Leasing Company, Curbco, and Taurus. *Id.* Franco claimed that at a meeting with Vespe, Laxton, and Vespe the Versatile's project superintendent, Vespe continually insisted upon receiving the money requested for these corporations, referring to it as "my money." *Id.* at a418. Franco further stated that when he refused to alter his position Vespe threw the four checks written to the taxing authorities at him and stated "I don't care if they ever get their money." *Id.* at a419.[2]

Viewed most favorably to the government, this testimony supports a finding that Vespe had a significant say in Vespe the Versatile's financial affairs. It indicates his participation in decisions which affected how much money came into the company, and the November, 1975 incident suggests that his input into such decisions was great. Along with Padrutt's testimony, it provides an ample basis for the jury's finding that Vespe did not meet his burden of proving he was not a responsible person of Vespe the Versatile.[3]

▆ Vespe also claims the jury's findings that he was a responsible person of both Vespe the Versatile and Environmental are contrary to the court's instructions. He notes that the court instructed the jury that "[t]he employers in this case were corporations, and as such, could only act through their directors, officers and em-

**2.** Franco continually referred to his interactions as with VCC rather than with Vespe the Versatile. Given his explanation that C & E had denied VCC permission to subcontract the work, this may have reflected merely his understanding that C & E's directions had been followed. Vespe, however, acknowledges that the work was actually subcontracted to Vespe the Versatile, Brief for Appellant at 8, and requests for payments were submitted on its stationary. Therefore, the jury may have permissibly found that Vespe's interactions with Franco were on behalf of Vespe the Versatile and not VCC.

**3.** Vespe claims the November, 1975 incident can only relate to his involvement with Vespe the Versatile up to that point. Accordingly, he argues that the jury could not have relied upon it to establish his responsibility or willfulness for any period after the third quarter of 1975. The incident, however, corroborates Padrutt's testimony which afforded the jury an adequate basis

for concluding that Vespe did not carry his burden of proof.

Franco also testified that he did not see Vespe after November, 1975 because of Vespe's incarceration. The jury could have concluded that Vespe could not have been a responsible person while he was in prison. Padrutt, however, stated that when Vespe was in prison he was in daily contact with his companies. Although this statement referred to a different period of incarceration, it would permit the jury to question whether Vespe's imprisonment standing alone meant he could not be a responsible person of Vespe the Versatile. Thus, there was sufficient evidence for the jury to have found for either party with respect to his responsibility during this period. To the extent Vespe also claims in support of his own motion for judgment n.o.v. that the jury was required to find he did not act willfully at that time, the same evidence requires we also reject it.

ployees." App. at a541. Since he did not hold any official position within the corporations, he contends the jury could not find him a responsible person.[4]

The jury charge, however, must be read as a whole. *Delaware Dep't of Health and Social Servs.*, 865 F.2d at 1418. Immediately after giving the above instruction, the court informed the jury that:

> Responsibility for purpose of Section 6672 *is a matter of status, duty and authority.* It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability. Rather, liability is based upon the existence of significant as opposed to absolute control over the corporations [sic] finances.

App. at a542 (emphasis added). Consistent with the highlighted language, the jury could have properly found that even if Vespe did not formally hold a position with the corporations he exercised the requisite authority.[5]

### III.

Next, we consider the grant of judgment n.o.v. to the government with respect to whether Vespe willfully failed to pay Vespe the Versatile's taxes for the second quarter of 1975. Since Vespe was the verdict winner on this point, judgment n.o.v. was properly entered only if, viewing the evidence most favorably to him, we nevertheless conclude that the record is " 'critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.' " *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir.1977) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969)).

Vespe presents two theories for upholding the jury's verdict. First, he claims it correctly reflects the fact that during his hospitalization he did not have the power to act willfully. Second, he argues that from the evidence of the joint checking system the jury could have found there were no funds available to Vespe the Versatile. He therefore claims that even if he was responsible for collection and payment of the company's employment taxes, the jury could have concluded he did not act willfully for any of the quarters at issue, including the second quarter of 1975.[6]

■ Even if Vespe could not have acted willfully while he was hospitalized he may still be liable for the associated taxes under section 6672. A responsible person acts willfully if he pays other creditors in preference to the IRS when he knows taxes are due. *Wall v. United States*, 592 F.2d 154, 163 (3d Cir.1979). Since the jury found Vespe was a responsible person at the time the taxes were incurred, if he later became aware that they were not paid and proceeded to pay other creditors in preference to the government, he acted willfully. *Garsky v. United States*, 600 F.2d 86, 91 (7th Cir.1979); *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *see also Caterino v. United States*, 794 F.2d 1, 6 (1st Cir.1986) (responsible person who did not learn of unpaid taxes until after they were incurred and who did not show that corporation lacked funds to pay them was liable), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987).[7]

---

**4.** Vespe does not dispute that one who is not an officer or employee of a corporation may be a responsible person. *Caterino v. United States*, 794 F.2d 1, 6 n. 1 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987). He argues only that the instructions do not allow such a finding.

**5.** Before the district court, Vespe also argued that the jury's verdict was inconsistent on its face and, apparently, that the portion of the verdict finding him liable for the taxes of Vespe the Versatile should therefore be set aside and judgment entered in his favor for those quarters. App. at a940–42. He does not raise this issue on appeal. Finally, Vespe claims he is

entitled to judgment n.o.v. because the jury's finding that he was a responsible person of Vespe the Versatile is "contrary to the evidence." Appellant's Brief at 31. Even if true, this is not a proper basis for entering judgment n.o.v.

**6.** Vespe does not contend that his hospitalization precluded the jury's finding that he was a responsible person during the second quarter of 1975. Accordingly, this argument is waived.

**7.** In *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Supreme Court considered whether an individual could be held liable under section 6672 for employment taxes incurred prior to his assumption of

Willfulness also encompasses the payment of other creditors with reckless disregard for whether taxes have been paid. *Sawyer v. United States*, 831 F.2d 755, 758 (7th Cir.1987). This standard is satisfied if the taxpayer " '(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.' " *Id.* (quoting *Wright v. United States*, 809 F.2d 425, 427 (7th Cir.1987)). Vespe's subsequent preference of other creditors to the government when he should have known of the past delinquency will subject him to liability.

In finding that Vespe acted willfully in not paying Vespe the Versatile's employment taxes for the third quarter of 1975 through the second quarter of 1976, the jury concluded that Vespe preferred other creditors to the IRS when he either knew the taxes for that period had not been paid or at least acted with reckless disregard for whether they had been paid. Given this state of mind, as a responsible person he should have strongly suspected that Vespe the Versatile might have also neglected to pay its taxes for the second quarter of 1975. He presented no evidence that he took any steps to determine whether or not they had been paid, or that such an inquiry would have been difficult or unavailing. To the extent the jury's finding rests on the proposition that Vespe could not have been aware the taxes for the second quarter of 1975 were unpaid, and therefore did not act willfully, it lacks support in the record. Vespe failed, as a matter of law, to carry his burden of prov-

ing that he did not subsequently act with reckless disregard for whether those taxes had been paid.

Vespe contends, however, that the jury may still have found he did not have the power to act willfully while he was hospitalized. This argument fails for similar reasons. One who was a responsible person when taxes were incurred, and who only later becomes aware that they were not paid, acts willfully by then paying other creditors in preference to the United States, even if the money specifically withheld has been dissipated. *Garsky*, 600 F.2d at 91. Vespe, a responsible person when the taxes were incurred, does not meet his burden of proof simply by showing he was for some other reason unable to act willfully at that time. If Vespe knew of the delinquency or closed his eyes to it after his hospitalization, and Vespe the Versatile thereafter paid other creditors instead of satisfying the delinquency, he is personally liable without regard to whether the company might have had to use funds other than those initially withheld.

■ Vespe's remaining argument is that the evidence of the joint checking system permitted the jury rationally to conclude that C & E, not he, controlled all of the funds available to Vespe the Versatile during any or all of the disputed quarters. By finding that Vespe acted willfully with respect to the taxes for the third quarter of 1975 through the second quarter of 1976, the jury must have rejected his contention that C & E controlled all funds available to the company to pay these taxes.[8] Given

control, where the withheld sums had been dissipated by the previous management. The Court rejected the proposition that all cash received by the corporation after Slodov assumed control was impressed with a trust in favor of the United States to satisfy the unpaid taxes. *Id.* at 251, 254–56, 98 S.Ct. at 1788–89. In doing so, it noted that

> [t]he language of § 7501 limits the trust to "the amount of the taxes *withheld* or *collected.*" (Emphasis added.) Comparing that language with § 6672, which imposes liability for a willful failure to *collect* as well as failure to pay over, makes clear that under § 7501 there must be a nexus between the funds collected and the trust created.

*Id.* at 256, 98 S.Ct. at 1789 (emphasis in original). The Court concluded that Slodov could only be held liable for failing to pay over funds generated after he assumed control which were directly traceable to taxes collected under section 6672. *Id.* at 259–60, 98 S.Ct. at 1791.

Here, unlike *Slodov,* Vespe was a responsible person at the time the taxes were incurred and thereafter. *See supra* Section II & n. 6. He therefore had a duty to collect the taxes for which the government now seeks to hold him liable, providing the nexus missing in *Slodov.*

8. Vespe does not argue, based on the evidence of the joint checking system, that the jury was required to find that he was not willful with respect to the taxes for these quarters because C

this finding, we can discern no basis in the record, and Vespe has suggested none, on which the jury could have concluded that the system operated differently during the second quarter of 1975. Since the evidence of the joint checking system was undifferentiated, Vespe's contention that the jury could have reached a different result for this quarter based solely on the evidence of the system necessarily creates inconsistent verdicts. The only rational means of reconciling them is by concluding that the verdict for the second quarter of 1975 rested on either the theory that he was not aware these taxes were unpaid while he was in the hospital or that his hospitalization deprived him of the power to pay them, and not on the evidence relating to the joint checking system. However, as demonstrated above, neither of the hospital-related theories may properly support the result.

Moreover, even if the jury could logically have inferred that the joint checking system prevented him from acting willfully during the second quarter of 1975, it would not negate later willful acts with respect to those taxes. As a responsible person when the taxes were incurred, he was required to satisfy the delinquency if funds later became available. *Id.* On this record, when the jury found there were funds available to pay the taxes for the third quarter of 1975 through the second quarter of 1976, Vespe was also obligated to pay the taxes for the second quarter of 1975 in the absence of evidence showing there were no funds available for them.

Of course, the fact that Vespe the Versatile had the resources to pay the taxes for the third quarter of 1975 through the second quarter of 1976, and instead chose to pay other creditors, does not mean that subsequent to Vespe's hospitalization it also had the ability to pay both its current tax obligations and the taxes for the second quarter of 1975.[9] However, since the jury found him responsible for these taxes, the burden was on Vespe, in asserting he did not act willfully, to prove that Vespe the Versatile did not have the needed funds. The evidence submitted on this point centered on the joint checking system. We can find no basis in the record upon which the jury could have concluded that while the company had the funds to pay the taxes for the third quarter of 1975 through the second quarter of 1976 it did not also have the additional funds to pay the taxes for the second quarter of 1975 at a point in time when Vespe was either aware of the past delinquency or had closed his eyes to it. Vespe failed, as a matter of law, to meet his burden of proving he did not act

& E controlled all the funds. Had he done so, we would view the evidence most favorably to the government as the verdict winner on this issue.

We note that the record contains evidence supporting the government for these quarters. Franco testified that C & E would pay whatever legitimate creditors were on the monthly list submitted to it up to the amount of the progress payment then due, *see* App. at a398, a412 & a417, and he was concerned that the taxing authorities be paid. *Id.* at a415. He also stated that three requests for joint checks to the IRS were honored. *Id.* at a408. This comports with both Laxton's testimony and the documentary evidence. *Id.* at a141, a868–70. Absent any documents showing that requests for joint checks to the IRS were ever refused, the jury could have concluded that Vespe did not meet his burden of proving that C & E controlled all available funds.

In addition, there was evidence that Vespe the Versatile had funds other than those which passed through the joint checking system. According to Franco, at the outset of the job C & E made at least one progress payment to the company before the joint checking system was implemented. *Id.* at a396. There was no evidence as to how this money was spent, and Laxton never testified that, during the time the taxes were incurred or thereafter, Vespe the Versatile lacked funds other than those it derived from C & E. Laxton also testified that the company maintained a bank account to make necessary payments, *id.* at a145, and no records were submitted showing the amount in this account. That Vespe the Versatile continued to meet its payroll from its own funds after its dispute with C & E in November, 1975, *id.*, further indicates it had other resources.

9. For example, one could suddenly become aware of previous unpaid taxes and have insufficient funds to cover both current and past tax liabilities. In such a case, one would not act willfully with respect to the past quarters by satisfying current tax obligations. The reach of this reasoning is, of course, limited. When additional funds are obtained, the taxpayer must satisfy his obligations to the IRS before paying other creditors.

willfully with respect to the second quarter of 1975 and judgment n.o.v. was properly entered.[10]

## IV.

■ Vespe also challenges the district court's decision to enter judgment n.o.v. for the government on his liability for Environmental's taxes. He notes that Padrutt, the treasurer of the company, denied knowledge of the unpaid taxes. Vespe contends that a "reasonable inference from this testimony was that, if those (Padrutt) closest to and handling the tax affairs of [Environmental] were unaware of tax delinquencies, then those removed from those affairs due to incarceration i.e. Taxpayer, were also unaware." Brief for Appellant at 30. The district court rejected virtually the identical argument, finding it "difficult to accept," App. at a45–46, reasoning that in light of all the evidence and given the lack of affirmative proof from Vespe as to his non-willfulness and non-responsible status, "reasonable minds could not differ and arrive at the conclusion that because Padrutt did not know, Vespe did not know." *Id.* at a46.

If Vespe relied only on his incarceration to bolster his argument, it would be problematic. The record before the jury does not clearly show the extent of his incarceration. Laxton testified that Vespe was in prison for "over a year," beginning in late 1975. *Id.* at a159. Padrutt similarly stated that three weeks after he began working for VCC, in late 1976 or early 1977, he was told Vespe was in prison and would soon be released. *Id.* at a310. This might lead one to infer that Vespe was no longer in jail as of "early 1977," a finding which would be consistent with Padrutt's testimony that he met with Vespe at Vespe's offices while he worked for VCC and Environmental. *Id.* at a341.

On the other hand, Laxton testified that there were change orders made on the "Matawan project" while Vespe was in jail. *Id.* at a238. Although Laxton did not specify when this was, Padrutt stated that Laxton participated in the bidding for the project and that Laxton left Environmental in July or August 1977. *Id.* at a257; *see also id.* at a357–58.

Finally, Padrutt stated that Vespe was in prison when Environmental was fired from the Key West project in January or February of 1978. *Id.* at a363–65. He did not tell the jury how long this imprisonment lasted or when it began or ended. Although a jury might infer from this that Vespe was continually incarcerated from late 1975 through early 1978, that inference is based on vague and uncertain evidence at odds with the evidence suggesting Vespe was out of jail in "early 1977," including Padrutt's testimony that he met with Vespe.[11]

---

**10.** Given our result, we need not consider whether, assuming C & E only provided Vespe the Versatile with its net payroll, Vespe would have acted willfully in not allocating these funds between its employees and the government. *See, e.g., Mazo,* 591 F.2d at 1154 (where corporation only has enough cash to pay net wages, responsible persons "are nevertheless liable for failure to collect withholding taxes; the United States may not be made an unwilling joint venturer in the corporate enterprise"); *Emshwiller v. United States,* 565 F.2d 1042, 1045–46 (8th Cir.1977) (no basis for employer favoring payments to employees over United States); *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975) (employer should allocate available funds between workers and government). We also need not decide if C & E's control of all funds through the joint check system could have supported a verdict for Vespe. We hold only that on these facts the jury could properly conclude that Vespe did not

meet his burden of showing the company's funds were controlled by C & E.

**11.** In his brief, Vespe states as a fact that he was incarcerated from January, 1978 through April, 1979. Brief for Appellant at 13. It is, however, difficult to find support in the evidence presented to the jury for his continuous incarceration during this period. Moreover, the precise dates of incarceration were not before the jury since Vespe succeeded in obtaining an *in limine* order barring the government from introducing evidence of this conviction except for impeachment. Counsel's statement of facts is therefore misleading since, by referring to the *in limine* motion, it implies the specific dates were before the jury when in fact they were not.

Vespe's incarceration apparently spanned two distinct periods—November 10, 1975 to March 26, 1976, and January, 1978 through April, 1979. *Id.;* App. at a1066–67. Thus, of the five quarters at issue for Environmental, he was incarcerated during only one. However, this evi-

The evidence of incarceration is not, however, the only evidence from which the jury could find Vespe did not act willfully. Padrutt disavowed any knowledge of Environmental's unpaid taxes. As treasurer, Padrutt could be expected to know whether the company's taxes had been paid and he acknowledged that he may have signed some of the corporate tax returns. App. at a367. In addition, he stated that when a creditor needed to be paid he would sometimes speak to Vespe about the matter and Vespe would decide whether to meet the obligation. This suggests Vespe would become aware of the unpaid bill through Padrutt, supporting his claim that if Padrutt was unaware of the unpaid taxes he would also lack such knowledge.

The district court, however, reasoned that Padrutt's lack of knowledge was not dispositive since Vespe did not introduce evidence directly showing he did not know the taxes were unpaid. The government repeats this argument. Such direct evidence may well be more persuasive than indirect evidence. We see no reason, however, for holding it to be the only means by which a taxpayer may meet his burden of proof. The government did not press this argument before the jury and Padrutt's testimony, while not conclusively establishing Vespe's lack of knowledge, is sufficient to permit a finding that Vespe was unaware of the unpaid taxes. The argument that Padrutt's ignorance of the unpaid taxes does not imply that Vespe was similarly unaware was one for the jury and not, on this record, a basis for granting judgment n.o.v.

Likewise, Vespe's failure to testify is not grounds for upsetting the jury's verdict. The government argued to the jury that Vespe could have easily refuted the testimony of the other witnesses and urged it to consider the evidence in light of his silence. *Id*. at a503, a525. This goes to the weight of Vespe's evidence rather than its sufficiency. The jury's apparent decision not to attach such significance to Vespe's silence cannot, in the face of evidence supporting a verdict in his favor, justify the district court's ruling.

Accordingly, we hold that judgment n.o.v. was improperly entered in favor of the government with respect to Vespe's liability for the unpaid taxes of Environmental.

## V.

Vespe also argues that the government's conduct at trial and various evidentiary rulings by the district court require a new trial. Finding no merit to these contentions, we will affirm the district court's denial of his new trial motion.

■ Vespe first points to two acts of alleged government misconduct during the trial. He contends that the government's reference in its opening statement to his conviction for bribing an IRS official was improper and violated the court's *in limine* order barring the use of the conviction except for impeachment. He also complains of the government's statement in its closing argument that he was "sitting and smirking" during the trial. App. at a525. His failure to object to either statement at the time it occurred is fatal to his claim of error. *Giffin v. Ensign*, 234 F.2d 307, 316 (3d Cir.1956).[12]

■ Vespe next asserts that Padrutt's deposition should not have been read into the record because the government did not establish Padrutt's unavailability by showing the steps it took to ensure his presence. Vespe relies on Federal Rule of Evidence 804, which permits the admission of certain statements, which would otherwise be hearsay, if the declarant is "unavailable." The only part of the definition potentially

dence was not before the jury and would not preclude a finding that he was imprisoned at other times. Vespe, though, makes no attempt to show what the jury could have concluded based on the evidence of record regarding his incarceration.

**12.** Indeed, to the extent Vespe claims the prejudicial impact of the government's opening state-

ment resulted from reference to his prior criminality, as opposed to the revelation of the specific nature of the offense, his position is inconsistent with his arguments before the jury and this court. At both times, he has claimed he could not have acted willfully due to his incarceration.

applicable to this case provides for the use of such statements where the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Fed.R.Evid. 804(a)(5).

Federal Rule of Civil Procedure 32(a)(3)(B), however, constitutes an independent exception to the hearsay rule. *In re Bankers Trust Co.*, 752 F.2d 874, 888 n. 17 (3d Cir.1985); Fed.R.Evid. 802 & advisory committee's notes. It permits the deposition of a witness who is more than one hundred miles from the courthouse to be used for any purpose "against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof ... unless it appears that the absence of the witness was procured by the party offering the deposition." Fed.R.Civ.P. 32(a)(3)(B). Vespe has not challenged the government's representation that Padrutt satisfied the distance requirement, and the district court's determination that there was no showing that the government had procured Padrutt's absence is not an abuse of discretion. Since Vespe apparently had notice of the deposition, App. at a291–92, and does not argue otherwise, there was no error in allowing the deposition to be used.[13]

■ Vespe also challenges the use of certain portions of the deposition. Thus, he argues that statements regarding the Vespe Leasing Corporation, his wife's involvement with Environmental and VCC and its "overall head" were irrelevant and could only have confused the jury, given the similar names of the companies. These passages were, however, relevant to Pa-

drutt's testimony that all businesses which operated from 100 Essex Street and later from Vespe's home were run by Vespe.[14]

Nor do we find any prejudicial error in the admission of questions and answers regarding the "Vespe companies" or the "Versatile" company. Vespe contends it is unclear what Padrutt was referring to in these passages and that the jury may have found he was a responsible person of Vespe the Versatile based on statements regarding other corporations. In context, these limited passages provide little chance for confusion and Padrutt's statements that he did not have detailed knowledge of the differences among the various companies enabled the jury to determine the appropriate weight to be given the challenged exchanges. The district court did not abuse its discretion in admitting them.

■ The district court also permitted Padrutt to testify that Vespe stated he did not wish to sign anything relating to Environmental "[b]ecause of the problems he had with previous convictions and the brewing tax problems with Vespe Contracting and Curbco and that kind of business." App. at a370. This was directly relevant in explaining the absence of Vespe's signature on any documents involving the two companies, and we find no error in the district court's ruling. Similarly, Vespe's assertion that Franco's testimony about a call he received from the Maryland taxing authorities was unduly prejudicial is without merit. This testimony was not admitted for the truth of the matter asserted, but rather to show why Franco acted as he did, and the jury was so instructed. *Id.* at a406–07.[15]

---

**13.** Likewise, the trial court did not abuse its discretion in sustaining the government's objection to Vespe's argument in summation that Padrutt could have been produced to testify at minimal expense. *See Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir.1983) (party wishing to make such argument must show missing witness is peculiarly within adversary's power to produce).

**14.** Vespe also maintains that Padrutt did not know the relationship between VCC and Vespe the Versatile and that he was not involved in the

project in Washington. Padrutt's testimony on the latter company, Vespe continues, lacked a basis in personal knowledge. As we have previously held, however, the deposition reveals that Padrutt had a sufficient basis to give an opinion on the topics on which he testified. *See supra* at 1332–33.

**15.** Vespe argues that Franco's testimony on this point "dead-ended" since he "took no further steps in response to the telephone call from the Maryland taxing authority beyond hanging up the phone." Brief for Appellant at 41. Franco, however, explained that, based in part on the

Finally, the district court excluded five documents evidencing the default judgments entered against Padrutt and Fein. It reasoned that since the government had stipulated to these facts, there was no need to admit documents which might confuse the jury. *Id.* at a226–27. There was no abuse of discretion in this ruling.

## VI.

■ After all the evidence was presented in this case, Franco informed the government that Vespe accosted him immediately after he testified in the hallway outside the courtroom. The government reported this allegation to the court. It held a hearing on the matter. Vespe argues that in doing so the district court improperly became a prosecutor and that it erred in denying his motions for recusal under 28 U.S.C.A. §§ 144 and 455 (West 1968 & Supp.1988).[16]

■ When a timely affidavit is filed under section 144, its factual allegations must be accepted as true. *E.g., Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir.1976).[17] Conclusory statements and opinions, however, need not be credited. *See, e.g., United States v. Haldeman*, 559 F.2d 31, 134 (D.C.Cir.1976) (en banc) (per curiam), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The court passes solely on the legal sufficiency of the facts, and must recuse itself if they " 'give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' " *United States v. Townsend*, 478 F.2d 1072, 1073–74 (3d Cir.1973) (quoting *Berger v. United States*, 255 U.S. 22, 33–

34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921)). Only bias which is personal or extrajudicial in nature is disqualifying. *Johnson v. Trueblood*, 629 F.2d 287, 290–91 (3d Cir. 1980); *Mims*, 541 F.2d at 417.

Vespe's affidavit states that the district court ordered the government's attorney to produce two witnesses to testify before the court on the alleged incident and invited the United States Attorney to conduct, or assist in conducting, an investigation. App. at a982. When this invitation was declined, the affidavit continues, the court "personally conducted what it termed an 'investigation' into possible wrongdoing by me, including intimidation of witnesses" and on or about the same date informed the parties that it would refer its "investigation" to the United States Attorney's Office. *Id.* Vespe further averred that one witness was issued *Miranda* warnings and that the " 'investigation' was not, to my knowledge or through any indication by the Court, in the nature of a contempt proceeding but was instead for the potential benefit and use of U.S. Attorney's Office." *Id.*

Disregarding Vespe's speculation as to the purpose of the proceedings, these allegations would not suggest to a reasonable person that the district court harbored a personal bias against Vespe. The district court acted in response to a claim that a witness in the action before it may have been intimidated. Nothing in the affidavit suggests that the court's actions in conducting the hearing were influenced by its attitude toward Vespe rather than by the nature of the alleged incident. *See Mims,*

---

phone call, he decided to draw checks to the taxing authorities and to other creditors but to refuse requests for payments to Vespe's "captive corporations." *See supra* at 1333.

**16.** The government mentioned the allegation in open court, and out of the jury's presence. There is no suggestion that the government engaged in any *ex parte* communications or that the jury's deliberations may have been affected by the information.

**17.** 28 U.S.C.A. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal

bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

541 F.2d at 417 (defining personal bias for purposes of that case as "an attitude toward petitioner that is significantly different from and more particularized than the normal, general feelings of society at large"). The affidavit reveals only an effort to ensure the integrity of the judicial process. Regardless of the wisdom of the means chosen, they are not indicative of the type of bias which warrants recusal under section 144.[18]

We also hold that the district court did not abuse its discretion in denying Vespe's motion under section 455(a). That section requires recusal if the court's "impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a). The applicable inquiry is whether " 'a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impartiality.' " *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir.1988) (quoting *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987)).

A review of the hearing transcript belies Vespe's assertion that the district court "assumed the role of prosecutor." The attorneys conducted the examination of those who testified at the hearing. Many of the court's questions were directed towards clarifying responses. Its inquiries reveal no predisposition to believe Franco's allegations, and they do not appear to have been made with any purpose other than determining what actually occurred. A reasonable person, knowing all the circumstances, would have no basis for doubting the court's impartiality because of its questions at the hearing.[19]

Vespe also claims certain comments by the court show it had aligned itself with the government. He emphasizes the court's statements regarding the seriousness of the allegations and referral of the matter to the United States Attorney's Office. In each case, however, the court prefaced its comments by indicating it would take action *if* there had been intimidation of any witness.[20] Nor are Vespe's attempts to portray the district court's actions as a full-fledged investigation supported by the record. The court characterized the hearing as an investigation only when pressed by Vespe's counsel and its response reveals merely a preliminary inquiry into the matter to see if there was substance to the charges:

> MR. GRIMES: If I may, ... could I ask as to the nature of the proceeding?
>
> THE COURT: I want to find out what happened yesterday.
>
> MR. GRIMES: Is this a contempt proceeding?
>
> THE COURT: No. Investigative, if you want to call it anything. I want to know what happened.
>
> Counsel, I don't know what will come out, if anything, but I want to find out what happened.

App. at a554. A reasonable person, knowing all the facts, would not believe that the court acted as Vespe's prosecutor or otherwise doubt the court's impartiality based on these comments, especially given the court's limited questioning of the hearing participants.[21] Accordingly, we hold that

**18.** Vespe suggests that the issuance of *Miranda* warnings to an individual who testified at the hearing shows "the lower court's willingness to infringe upon a witness's Fifth & Sixth Amendment rights." Brief for Appellant at 18 n. 1. To the contrary, this evidences a desire to ensure that the witness's constitutional rights were protected and adds nothing to Vespe's assertion of bias.

**19.** The transcript also discloses the context in which *Miranda* warnings were given. When Franco was called to testify, Vespe indicated he might allege that Franco had engaged in threatening behavior. App. at a579. Vespe then suggested that Franco be given the *Miranda* warnings. The court's use of a procedure which Vespe suggested hardly demonstrates its bias

against him. In any event, the issuance of these warnings do not aid his cause. *See supra* note 18.

**20.** Thus, when initially informed of the allegations, the court commented, "Mr. Vespe, *if this is substantiated,* you're in trouble." App. at a478 (emphasis added). Similarly, the court stated at the hearing, "*If there was intimidation of witnesses,* I'm referring this to the United States Attorney for investigation," *id.* at a552–53 (emphasis added), and "I intend to follow-up, *if it's necessary,* to turn it over to the U.S. Attorney." *Id.* at a576 (emphasis added).

**21.** One comment by the district court is troubling. When Vespe asserted that events occurring outside the courtroom were unrelated to

the district court did not abuse its discretion in denying Vespe's motion for recusal under section 455(a).

■ Even were we to hold that the district court abused its discretion in denying the recusal motions, the error would be harmless. Our review of judgment n.o.v. motions is plenary. Any bias which may have infected the district court's decision is fully remedied by our consideration of the motions. Although the same would not ordinarily be true of discretionary rulings at trial, on this record Vespe was not prejudiced by the district court's continued participation in this case, where the bias allegedly arose after all the evidence had been presented.[22]

The only remedy which Vespe sought was to have a different judge hear the post-trial motions. Had this relief been granted, the judge to whom the matter was assigned would have been in no better position than we are to reevaluate rulings made during the trial. Accordingly, Vespe has not shown prejudice.

## VII.

For the reasons set forth above, we will reverse the portion of the district court's order granting judgment n.o.v. to the government for the unpaid taxes of Environmental, and will in all other respects affirm.

■

the underlying action, the court responded that the alleged incident "may have a bearing on what Mr. Vespe believes to be his culpability in the case." App. at a478. This, however, is the lone suggestion in the record that the court considered the allegations in any context other than their threat to the integrity of the judicial process. To a reasonable person familiar with the entire record, it would be clear that the court's concerns were more accurately summarized in what it said immediately thereafter: "I

don't want witnesses threatened who appear in my courtroom, so it does have something to do with my courtroom and this trial." *Id.* at a478–79.

22. The record does not reveal that the district court's reaction to the allegation that Vespe had intimidated a witness was unwarranted or suggested any pre-existing bias towards him.