**Jerome L. GARSKY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee and Third-Party Plaintiff,**

v.

**Ralph BITTERS, Third-Party Defendant-Appellee.**

No. 78–2190.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1979.

Decided June 14, 1979.

primarily designed to weed out those who could not read and understand elementary words of the English language.

Andrew O. Riteris, Milwaukee, Wis., for plaintiff-appellant.

William A. Friedlander, Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellee.

Before PELL and WOOD, Circuit Judges, and KIRKLAND, Senior District Judge.*

KIRKLAND, Senior District Judge:

The principal issue before us on this appeal is whether a "responsible person" who has knowledge of payments to other creditors after he was aware of the failure of his company to pay over employment taxes withheld for a prior quarter may be assessed a penalty equal to the amount of taxes pursuant to Section 6672 of the Internal Revenue Code, 26 U.S.C. § 6672, notwithstanding the fact that the withheld funds have been dissipated at the time the

---

* Judge Alfred Y. Kirkland of the Northern District of Illinois sat on this case at the time of oral argument by designation. On May 1, 1979, Judge Kirkland became a senior district judge of the Northern District of Illinois and is continuing to sit on this case by redesignation.

"responsible person" becomes aware of the failure to pay over. We hold that a "responsible person"[1] may be penalized for this amount. Accordingly, we affirm the judgment of the District Court of August 28, 1978 which corrected its judgment of March 16, 1978.

## I. Facts

The facts, as found by the District Court[2] and undisputed by the parties, can be summarized as follows:

Plaintiff-Appellant ("taxpayer") brought this action in the District Court for the Eastern District of Wisconsin seeking a refund of the amount paid by taxpayer toward an assessment penalty against him and third-party defendant Bitters for unpaid withholding taxes of Apex Excavators, Inc. ("Apex") for the first and fourth quarters of calendar year 1970 and for the first three quarters of calendar year 1971.[3] Taxpayer acknowledges his liability for the amount of the withholding taxes for the fourth quarter of 1970 and the first three quarters of 1971. Taxpayer disputes, however, any assessment of a penalty for the amount of taxes withheld but unpaid for the first quarter of 1970.

Prior to 1966, taxpayer and his wife were equal owners of Garsky Construction Corporation. Taxpayer was the company's chief executive officer. Bitters was the sole shareholder and chief executive officer of Apex. Both companies were small operations engaged in the installation of sewer and water lines. At times, the companies worked together, with each sometimes serving as subcontractor for the other. The small size of the companies, however, limited their ability to obtain performance bonds and consequently limited the types of jobs for which they realistically could bid.

In the summer of 1966, taxpayer and Bitters discussed merging their operations. In July of that year taxpayer and his employees went to work for Apex under a verbal agreement. From the summer of 1966 through 1971, Garsky Construction was, for practical purposes, dormant. Its equipment was used by Apex and Apex made the financing and maintenance payments on the equipment. Apex also paid certain back payroll accounts.

The formal merger of Apex and Garsky Construction was never completed. From summer of 1966 through 1971, however, the corporations had de facto become one. Taxpayer and his employees operated jointly with Apex on all construction projects. These joint operations were on an informal basis.

In this cooperative venture, Bitters remained chief executive officer of Apex and had authority to sign checks, obtain financing, negotiate contracts and supervise operations. Taxpayer, however, also had check writing authority over two checking accounts maintained by Apex, estimated and bid jobs, paid creditors and hired and fired employees subject to Bitter's agreement.

Although it is unclear whether taxpayer was ever officially designated an officer of

1. Plaintiff-Appellant ("taxpayer") does not contest the District Court's finding that he is a "responsible person" within the meaning of Section 6672.

2. The findings of fact and conclusions of law of the District Court, entered on February 3, 1978, are unofficially reported at 78- 1 U.S. Tax Cases ¶ 9246.

3. Taxpayer's action also sought a temporary restraining order and a permanent injunction prohibiting the United States, the District Director of Internal Revenue for the District of Milwaukee and the Commissioner of Internal Revenue from levying on the assessment against taxpayer. In its corrected judgment of August 28, 1978 the District Court dismissed the request for injunctive relief by taxpayer, dismissed the causes of action against the District Director of Internal Revenue for the District of Milwaukee and the Commissioner of Internal Revenue for lack of jurisdiction, and awarded judgment to the United States on a third-party complaint it filed against Bitters in the amount of $47,281.94 plus statutory interest. A previous appeal (No. 78–1575) by taxpayer in this case from a judgment entered on March 16, 1978 that merely awarded judgment to the United States on its counterclaim and third-party complaint was dismissed by this Court for lack of jurisdiction on August 1, 1978. Taxpayer's current appeal concerns only the denial of his claim for refund.

Apex, taxpayer did sign promissory notes and other agreements as a vice-president of Apex and Apex performed contracts on the basis of taxpayer's signature. Moreover, taxpayer received the same salary as Bitters and was treated as his equal in the organization.

In 1970, Apex experienced severe financial difficulties. At the end of the first quarter of that year, however, the aggregate balance of the two checking accounts maintained by Apex exceeded the amount of employment taxes withheld from the first quarter wages of Apex' employees. Nonetheless, Apex failed to pay the amount of employment taxes withheld to the United States due on April 30, 1970.

Although positive balances in the two accounts were reduced to overdrafts by May 11 and June 9, 1970, respectively, subsequent deposits were sufficient to enable Apex to discharge its employment withholding tax liability for the first quarter of 1970 as well as for all subsequent quarters. Notwithstanding the availability of these subsequent deposits, however, the taxes withheld from the wages of employees of Apex for these quarters were not paid to the United States. From the autumn of 1970 until he left Apex in August 1971, taxpayer was specifically aware that the employment taxes withheld from employees were not paid over to the United States. Apex was duly adjudicated bankrupt on November 4, 1971 by the District Court for the Eastern District of Wisconsin.

## II.

Under the withholding system established by the Internal Revenue Code, 26 U.S.C. § 3401 et seq., employers have a duty to collect both income and Federal Insurance Contribution Act taxes from their employees. Sums collected for these employment taxes are commonly referred to as "trust funds" because the Code provides that they are deemed to be a "special fund [held] in trust for the United States." 26 U.S.C. § 7501.

Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are later actually paid by the employer. An employer who fails to pay taxes withheld from its employees' wages is liable for the taxes which should have been. 26 U.S.C. §§ 3102(b) and 3403. An officer or employee of a corporation who is responsible for the collection of employment taxes from the pay due an employee may be assessed a penalty equal to the amount of the taxes if he willfully fails to account for and pay over the amount due to the United States. 26 U.S.C. § 6672.

Section 6672 of the Revenue Code provides in pertinent part that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded or not collected, or not accounted for and paid over . . .

Examining taxpayer's role in his association with Bitters and Apex in light of the criteria used by this and other courts to determine the touchstones of responsibility, see e. g. Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970) and Braden v. United States, 318 F.Supp. 1189, 1194 (S.D. Ohio 1970), the District Court held taxpayer to be a "responsible person" within the meaning of Section 6672. The Court further concluded that the taxpayer's failure to pay over the withheld funds once he had knowledge of the failure to pay by Apex was "willful" as that term is employed in Section 6672. Based on these conclusions, the District Court held taxpayer responsible for a penalty equal to the total amount of the employment taxes withheld but not paid over for all quarters in issue.

Taxpayer asserts that the District Court wrongfully penalized him for the amount of the taxes withheld for the first quarter of

1970. Taxpayer contends that funds acquired after the first quarter of 1970 were not impressed with a trust under 26 U.S.C. § 7501(a) and thus use of these funds by taxpayer to pay other creditors was not a violation of Section 6672. Taxpayer also argues that his failure to pay was not "willful".

Taxpayer attempts to support these contentions by relying on the Supreme Court's holding in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). However, we disagree both with taxpayer's contentions and with his construction of the holding of *Slodov*. Instead, we agree with the Fifth Circuit's view of *Slodov* as expressed in *Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979), and find the reasoning and holding of *Mazo* applicable here.

Specifically, taxpayer argues that at the time (autumn of 1970) he learned of the failure of Apex to pay over the taxes withheld for the first quarter of that year, the actual funds withheld already had been expended. Taxpayer asserts that because the specific funds withheld for taxes during the first quarter of 1970 had been dissipated by the time he learned of the failure to pay, any funds acquired after that date were not impressed with a trust under Section 7501(a). Thus, taxpayer contends that the use of these funds to pay other creditors did not constitute a "willful" failure to pay.

■ Taxpayer's argument that only the actual funds withheld are impressed with a trust misconstrues the interpretation of Section 7501(a) by the Supreme Court in *Slodov*. We agree instead with the conclusion of the Fifth Circuit in *Mazo*, that:

The trust § 7501 creates for funds withheld may in most circumstances be enforced. However, the liability of responsible persons generally is not limited to restoring actual cash diverted from the trust; it encompasses the duty to have initially or to collect funds to pay withholding taxes. Thus, if a corporation has only sufficient cash to pay net wages, and does so, there may literally be no funds to constitute the corpus of the trust, but the responsible persons are nevertheless liable for failure to collect withholding tax-

es; the United States may not be made an unwilling joint venturer in the corporate enterprise. (citations omitted)

591 F.2d at 1153–54.

With this background, the *Mazo* Court then examined the language of the *Slodov* opinion that Sections 6672 and 7501 do not "impress a trust . . . on the corporation's after-acquired cash," 436 U.S. at 254, 98 S.Ct. at 1789, and that Section 6672 cannot "be construed as establishing a fiduciary obligation to pay over after-acquired cash unrelated to the withholding taxes." 436 U.S. at 255, 98 S.Ct. at 1789. In a discussion that is particularly relevant to the case before us, the Fifth Circuit carefully distinguished between the situation where the person held responsible under Section 6672 assumed control of the corporation after the funds withheld had been dissipated and the situation where the "responsible person" is a "responsible person" throughout the period that the funds are acquired.

■ The *Mazo* Court recognized that in *Slodov*, the defendant was not liable for a Section 6672 penalty because:

The funds he acquired after his accession to control were not subject to a trust, and his duty as a person assuming corporate control with respect to the accrued withholding tax liability was limited to paying any trust funds related to that liability and any other funds directly traceable to those trust funds that had been dissipated. Where there has been no change in control, however responsible persons are subject to a duty to apply any available unencumbered funds to reduction of accrued withholding tax liability whether or not those funds are deemed to be trust funds within the meaning of § 7501. See *Maggy v. United States*, 9 Cir. 1977, 560 F.2d 1372, 1376, and *Teel v. United States*, 9 Cir. 1976, 529 F.2d 903, 905.

591 F.2d at 1154.

We agree with the Court in *Mazo* that this is the correct construction of the Supreme Court's language in *Slodov*. We also agree with the Fifth Circuit that the *Slodov* Court implicitly affirmed this construction when it stated that:

When the same individual or individuals who caused the delinquency in any tax quarter are also the "responsible persons" at the time the Government's efforts to collect from the employer have failed, and it seeks recourse against the "responsible employees," see IRS policy statement P–5–60, IRS Manual, MT 1218–56, there is no question that § 6672 is applicable to them. It is the situation that arises when there has been a change of control of the employer enterprise, here corporations, prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists that creates the question for our decision. (Footnote omitted).

436 U.S. at 244–45, 98 S.Ct. at 1784.

Therefore, we hold that *Slodov* does not relieve a "responsible person" of the responsibility to reduce accrued withholding tax liability with funds acquired after the funds actually withheld have been dissipated so long as the person responsible has been so throughout the period the withholding tax liability accrued and thereafter. As a consequence of this holding, taxpayer's argument that his decision to pay other creditors of Apex was not a "willful" failure to pay over within the ambit of Section 6672 is easily rejected. *See Mazo v. United States,* 591 F.2d at 1157.

This Court previously has defined "willful" in the context of Section 6672 as a "voluntary, conscious or intentional—as opposed to accidental—[decision] not to remit funds properly withheld to the Government." *Monday v. United States, supra* at 1216. There is no dispute here that taxpayer's decision to use funds obtained by Apex to pay its other creditors after he had knowledge of the failure to pay over the funds withheld for the first quarter of 1970 was conscious and intentional and not accidental.

■ The willfulness requirement of Section 6672 is satisfied if the responsible person acts with a reckless disregard of a known risk that the trust funds may not be remitted to the Government such as by failing to correct mismanagement after be-

ing notified that the withholding taxes have not been duly remitted. *Kalb v. United States,* 505 F.2d 506, 511 (2nd Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). A responsible person's use of funds, or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax, is willful conduct within the scope of Section 6672. *Anderson v. United States,* 561 F.2d 162, 166 (8th Cir. 1977) and *Teel v. United States,* 529 F.2d 903, 905–06. Taxpayer acknowledges that this is precisely the situation in which he finds himself.

In summary, we agree completely with the holding of the Fifth Circuit in *Mazo* that:

In the case of individuals who are responsible persons both before and after withholding tax liability accrues, as the appellants were in this case, there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.

Accordingly, the judgment appealed from is affirmed.