Danny L. BOWLEN and Michael J. Bowlen, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 90–3497.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1991.

Decided Feb. 12, 1992.

Vincent S. Taylor (argued), Taylor, Hoff & Bauer, Bloomington, Ind., for plaintiffs-appellants.

Jeffrey L. Hunter, Asst. U.S. Atty. Office of the U.S. Atty., Indianapolis, Ind., Gary R. Allen, Charles E. Brookhart, Robert L. Baker (argued), Dept. of Justice, Tax Div., Appellate Section, Charles M. Green, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before WOOD, Jr.,* RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Danny L. Bowlen and Michael J. Bowlen (referred to collectively as the "Bowlens") brought an action against the government requesting a tax refund and an abatement of other taxes assessed against them pursuant to 26 U.S.C. § 6672. The government counterclaimed for the unpaid taxes. The district court granted the government's motion for a directed verdict after the close of the plaintiffs' evidence, and the plaintiffs appeal. We affirm the district court's judgment.

### I. Background

The Bowlens were involved with two oil drilling companies. Together with David Briggs, they were the sole shareholders, officers and directors of Cinco Drilling, Inc. ("Cinco Drilling"), a corporation engaged in drilling oil wells from late 1981 until mid 1983. The plaintiffs were also the sole shareholders, officers and directors of Cin-

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after consideration of this case.

co Operations, Inc. ("Cinco Operations"), a corporation engaged in oil field construction. Danny Bowlen was the secretary-treasurer of Cinco Drilling and the president of Cinco Operations. Mike Bowlen was the president of Cinco Drilling and the secretary-treasurer of Cinco Operations. David Briggs was the vice president of Cinco Drilling. Cinco Drilling and Cinco Operations shared office space in Henderson, Kentucky, and often were involved in the same drilling operations. Both of the Bowlens solicited business and assisted in the daily operations of the two corporations. Unfortunately the businesses were marginal, and certain payroll tax deficiencies occurred.

Initially, Danny Bowlen's wife and the Bowlens' sister handled accounting, payroll and tax services for both Cinco Drilling and Cinco Operations. In 1981, Phillip O'Nan came in as controller for Cinco Operations. O'Nan was responsible for all financial statement presentations and tax and general accounting functions for both Cinco Operations and Cinco Drilling. O'Nan was not an officer, director or stockholder of Cinco Operations or Cinco Drilling and was not authorized to sign checks for either corporation. The Bowlens testified that O'Nan would often present to them stacks of checks and corporate tax returns for signature. In addition, there was a signature stamp for Danny Bowlen in the corporations' office that O'Nan used from time to time. Even though the Bowlens left accounting responsibilities to O'Nan, all books and records maintained by the corporations were accessible to the Bowlens. However, the Bowlens testified that O'Nan never suggested that there was a payroll tax problem, and they were unaware of one.

In December 1982, both corporations began experiencing serious cash flow problems. In late December 1982 and again in the first two quarters of 1983, Cinco Drilling borrowed working capital from David Briggs. It turned out, however, that some of the cash not flowing was that owed to the IRS.

In April or May of 1983, Briggs and the Bowlens discovered that O'Nan had not kept federal withholding taxes current. Briggs notified the IRS. He also held a meeting at his office with his attorney, the Bowlens and O'Nan to discuss both companies' payroll tax problems. They agreed to close down Cinco Operations and to keep Cinco Drilling's taxes current from then on. In July, the Bowlens, Briggs and his attorney met with an IRS agent. Briggs agreed to take over the daily operations of Cinco Drilling, and the IRS said that they would not foreclose on Cinco Drilling to collect delinquent payroll taxes if Briggs kept the corporation current on all future taxes. The IRS also told Briggs that it would not assess a 100% penalty against him pursuant to 26 U.S.C. § 6672 if he could prove that he was unaware that the back taxes were not being paid. The agent did not offer any such conditional dispensation to the Bowlens.

Briggs moved the corporate office for Cinco Drilling to Evansville, Indiana. The Bowlens remained officers, directors and shareholders but at that point had little to do with the daily operations of Cinco Drilling. Because Briggs' attorney had advised Briggs not to sign checks, Briggs brought checks to the Bowlens for signature. The Bowlens had no access to blank checks and signed only checks that Briggs presented to them. Under this arrangement, between July and September or October of 1983, the Bowlens signed checks to employees, suppliers and to the Bowlens' partnership, DMV Investments. Briggs never presented the Bowlens with a check to the IRS for back taxes, and the Bowlens never requested that one be written. However, Briggs kept current the payroll taxes accruing after July 1983. Nevertheless, it quickly became apparent that Cinco Drilling would not succeed financially. Cinco Drilling ceased operations in approximately October or November 1983, and its remaining assets were sold.

On November 24, 1986, pursuant to 26 U.S.C. § 6672, the IRS assessed against the Bowlens $42,705.41 for income and social security taxes withheld from the wages of Cinco Drilling's employees for the last two quarters of 1982 and the first two quarters of 1983. By application of tax refunds,

Danny Bowlen paid $6,582.97 and Michael Bowlen paid $9,398.56 of the assessed penalties.

The Bowlens brought this action in federal court to seek recovery of taxes and interest alleging that the taxes and interest were illegally assessed against them and collected by the IRS.[1] The government counterclaimed against the Bowlens for the amount of the penalties that remained owing plus statutory interest and fees.

The Bowlens presented their evidence at trial before a jury. At the close of their evidence, however, the district court granted the government's motion for a directed verdict. The district court reasoned that the Bowlens had stipulated that they were responsible persons for the last two quarters of 1983, that the Bowlens knew that the payroll taxes for the last two quarters of 1982 and the first two quarters of 1983 were not paid, and that the agreement that the IRS had with David Briggs did not apply to the Bowlens. Therefore, the Bowlens were liable for the penalty assessed under 26 U.S.C. § 6672. We affirm the district court but not because of the Bowlens' stipulations or because of the absence of an agreement between the IRS and the Bowlens. After our *de novo* review of the record, we conclude that viewed in the light most favorable to the Bowlens, the evidence could support only a jury verdict for the government.

## II. Analysis

### A. *Section 6672*

■ Under 26 U.S.C. § 3102 and § 3402, an employer must withhold federal social security and income taxes from their employees' wages. The taxes withheld constitute a special fund held in trust for the benefit of the United States. 26 U.S.C. § 7501(a); *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Garsky v. United States*, 600 F.2d 86, 89 (7th Cir.1979). If an employer withholds the taxes, the employee is credited with having paid the taxes even if the employer fails to turn them over to the United States, and the government has recourse only against the employer for the payment of the withholding taxes. *See Slodov*, 436 U.S. at 243, 98 S.Ct. at 1783.

■ To protect against revenue losses, 26 U.S.C. § 6672 provides that when "any person required to collect, truthfully account for, and pay over" withholding taxes willfully fails to do so, he is liable for a penalty equal to the total amount of the tax not paid over.[2] The Supreme Court has determined that an individual's liability under section 6672 does not depend on finding that he has the authority to perform all three of the duties enumerated in section 6672. Instead, by modifying the word "person," Congress "perhaps inartfully" sought to clarify that the penalty in section 6672 is limited to the collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over the tax. *Slodov*, 436 U.S. at 249–50, 98 S.Ct. at 1786–87. The term "person" in section 6672 includes an officer or employee of a

---

1. The district courts have original jurisdiction, concurrent with the United States Claims Court, of civil actions against the United States for recovery of internal revenue taxes alleged to have been erroneously or illegally assessed or collected. 28 U.S.C. § 1346. Under 26 U.S.C. § 7422, however, no suit may be maintained in any court for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed until a claim for refund or credit has been duly filed with the Secretary of the Treasury. The Bowlens properly filed their refund claims and attached copies to their complaints in the district court.

2. At the time the government imposed the penalty on the Bowlens, 26 U.S.C. § 6672(a) provided as follows:

   **(a) General rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

corporation who has the authority to avoid a default which constitutes a violation of the tax code. 26 U.S.C. § 6671(b);[3] *Harrington v. United States,* 504 F.2d 1306, 1312 (1st Cir.1974).

■ Our prior cases interpreting section 6672 demonstrate that liability depends on two factors. First, a party must be a responsible "person" of the delinquent corporation. Second, he must have willfully failed to carry out the responsibilities that the tax code imposes on him. *Sawyer v. United States,* 831 F.2d 755, 758 (7th Cir. 1987); *Garsky,* 600 F.2d at 89–90; *Monday v. United States,* 421 F.2d 1210, 1214–16 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Each of these factors will enter the analysis of the Bowlens' case.

The Bowlens argue on appeal that the district court's directed verdict stemmed from a misunderstanding of the case. The Bowlens assert that their stipulation acknowledging responsible person status applied only to the period beginning with the third quarter of 1982 and ending with the second quarter of 1983, the period when the payroll taxes were not being paid. Furthermore, the absence of an agreement with the IRS does not resolve the question of whether the Bowlens acted willfully at any time from the third quarter of 1982 through the fourth quarter of 1983. Therefore, the issues for the jury included whether the Bowlens acted willfully during the last two quarters of 1982 and the first two quarters of 1983; whether the Bowlens were responsible persons during the last two quarters of 1983; and whether the Bowlens acted willfully in failing to account for back taxes owed during the last two quarters of 1983. The Bowlens assert that viewing the evidence in the light most favorable to them, a jury could have found in their favor on these issues.

■ Since a motion for directed verdict raises only a question of law, we will review the district court's decision *de novo.*

*Daniel J. Hartwig Assoc. v. Kanner,* 913 F.2d 1213, 1221 (7th Cir.1990). After reviewing the evidence in the light most favorable to the Bowlens, we will determine for ourselves whether reasonable people could conclude only that the Bowlens were liable under section 6672.

*B. Responsible Person*

■ The district court summarily addressed the question of responsible person status by finding that the Bowlens stipulated that they were responsible persons for purposes of trial. The Bowlens insist that any stipulations as to responsible person status referred only to the last two quarters of 1982 and the first two quarters of 1983 and that their status during the last two quarters of 1983 remained an issue for trial. While we find that there was no stipulation as to the Bowlens' status during the last two quarters of 1983, based on the evidence adduced at trial, the district court properly took the issue away from the jury.

The Bowlens did not stipulate that they were responsible persons during the latter half of 1983. The government's brief in this court attempts to buttress the district court's contrary conclusion by shading the factual assertions that the Bowlens made in their pleadings and pretrial orders. While the Bowlens admitted in the written protest incorporated in their complaint that they were "at all relevant times herein" responsible persons for purposes of section 6672, the context of the statement indicates that "all relevant times herein" referred to the four quarters during which the taxes were withheld but not turned over to the government. The Bowlens set out the tax periods at issue on the first page of the written protest as "the tax periods ending 9/30/82, 12/31/82, 3/31/83 and 6/30/83." Again in their Pretrial Entry, the Bowlens state that they were responsible persons "for the assesesd [sic] tax quarters." Before and during trial, the Bowlens never

---

**3.** 26 U.S.C. § 6671(b) provides as follows:

  **(b) Person defined.**—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or

employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

stipulated that they were responsible persons during the last two quarters of 1983.

■ The absence of a stipulation, however, does not help the Bowlens. In this court, the Bowlens maintain that they lost their status as "responsible persons" after June 1983; but from the evidence the Bowlens produced at trial, no reasonable juror could have agreed with their contention. The Bowlens correctly state that the key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations. *Purdy Co. v. United States*, 814 F.2d 1183, 1188 (7th Cir.1987) (citing *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir.1975)). Since David Briggs took over the day-to-day operations of Cinco Drilling and prepared all checks for payment to the creditors of Cinco Drilling after June 1983, the Bowlens maintain that they did not retain responsible person status during the third and fourth quarters of 1983. Section 6672 casts a broad net of liability, however, and the Bowlens did not escape it once Briggs took over the day-to-day operations of Cinco Drilling.

■ A person is responsible under section 6672 if he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations. *Sawyer*, 831 F.2d at 758. To be responsible under section 6672, a person need not necessarily have exclusive control over the disbursal of funds or have the final word as to which creditors should be paid so long as he has significant control. *Adams v. United States*, 504 F.2d 73, 75 (7th Cir.1974). Courts have recognized several indicia of responsible person status including ownership of stock or holding of an entrepreneurial stake in a corporation and authority to sign checks on corporate accounts or prevent their issuance by denying a necessary signature. *Monday*, 421 F.2d at 1214–15; *Godfrey v. United States*, 748 F.2d 1568, 1576 (Fed.Cir.1984) (where a person has authority to sign the corporation's checks,

prevent their issuance, or control the voting stock of the corporation, he is generally a responsible person under section 6672); *Burack v. United States*, 461 F.2d 1282, 1291, 198 Ct.Cl. 855 (1972) (authority to cosign checks gives one the authority to decide which creditors should be paid). The existence of the same duty and concomitant liability in another officer of a corporation does not reduce the responsibility of a responsible person. *Monday*, 421 F.2d at 1214. Furthermore, delegation of the duty to turn over the taxes does not relieve a responsible person from liability. *George v. United States*, 819 F.2d 1008, 1012 (11th Cir.1987). In effect, responsibility under section 6672 encompasses all those connected closely enough with the business to prevent the default from occurring. *Adams*, 504 F.2d at 76.

The Bowlens remained responsible persons during the third and fourth quarters of 1983. They retained their ownership interest in the corporation. They remained officers and directors of the corporation. They remained authorized signatories on corporate checks and admitted that they continued to sign checks paying creditors other than the United States during the third and fourth quarters of 1983. They signed notes on behalf of Cinco Drilling during the third and fourth quarters of 1983. In short, in spite of David Briggs' control, they held sufficient control over the financial affairs of Cinco Drilling to ensure that other creditors were not preferred while the back taxes remained unpaid. *Cf. Purdy*, 814 F.2d at 1188 ("[T]axpayer had significant authority to control the financial affairs of [the corporation] and freely exercised that power to direct payment of [corporate] funds to certain creditors in preference to the withholding tax obligation.").

Nothing in *Haffa, Purdy,* or *Godfrey,* relied upon by the taxpayers, contravenes our interpretation of section 6672. In *Haffa* we affirmed a district court's conclusion that a financial advisor who had no control over financial decisions of a company he advised was not a responsible person under section 6672 even though he had agreed to

sign pay checks of the company in order to ensure that the company's accounts were not overdrawn. *Haffa,* 516 F.2d at 936. In *Purdy,* we concluded that the taxpayer's ability to veto and affirm payments to various creditors supported the district court's finding that the taxpayer was a responsible person within the meaning of section 6672. *Purdy,* 814 F.2d at 1187–88. In *Godfrey,* the Federal Circuit concluded that section 6672 did not impose a penalty on an outside director of a publicly held corporation who neither signed nor had authority to sign checks, who did not participate in the day-to-day fiscal management of the corporation, who did not control the payroll, who did not determine which creditors would be paid, and who did not own a significant fraction of the corporation's voting securities. *Godfrey,* 748 F.2d at 1576. Nothing in *Haffa, Purdy,* or *Godfrey* suggests that a responsible person within the meaning of section 6672 does not include an officer and director of a closely held corporation who has a one-third ownership interest in the corporation and signatory authority on corporate checks.

In spite of the absence of a stipulation, the facts adduced at trial could lead a reasonable jury to only one conclusion: the Bowlens were responsible persons during the third and fourth quarters of 1983 for purposes of section 6672 liability. Therefore, we find that even though the district court gave the wrong reason, it correctly found that the Bowlens were responsible persons from the third quarter of 1982 through the fourth quarter of 1983.

### C. Willfulness

After disposing of the issue of responsible person status on the basis of a nonexistent stipulation, the district court addressed the issue of the Bowlens' willfulness. The court went to great lengths to explain that Briggs had an agreement with the IRS but the Bowlens did not, and the Bowlens could not avoid liability based on Briggs' agreement. The Bowlens do not dispute that they cannot avoid liability based on the IRS's agreement with Briggs. Rather, they argue that the absence of an agreement is irrelevant because the Bowlens were not responsible persons during the third and fourth quarters of 1983. In effect, the Bowlens make no separate argument that their actions were not willful but instead rely solely on their argument that they were not responsible parties. We find that the Bowlens acted willfully as a matter of law.

In *Monday,* this court stated that willfulness in the context of section 6672 is a voluntary, conscious or intentional decision not to remit to the government funds properly withheld. *Monday,* 421 F.2d at 1216. In *Garsky,* we held that the responsible person's use of funds or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax is willful conduct within the scope of section 6672. *Garsky,* 600 F.2d at 91 (citing *Mazo v. United States,* 591 F.2d 1151, 1157 (5th Cir.1979), *cert. denied sub nom., Lattimore v. United States,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979)). The Bowlens admitted at trial that as of the end of the second quarter of 1983, they were aware that the withholding taxes for the last two quarters of 1982 and the first two quarters of 1983 had not been paid. They also admitted that they signed checks making payments to creditors other than the government during the last two quarters of 1983 while the withholding taxes for the earlier quarters remained in arrears. This evidence justified the district court's conclusion that the Bowlens acted willfully during the third and fourth quarters of 1983 as a matter of law.

### III. Conclusion

Viewed in the light most favorable to the Bowlens, the evidence adduced at trial could have led a reasonable jury to only one conclusion: the Bowlens were responsible parties who willfully failed to pay withholding taxes in arrears during the last two quarters of 1983. Consequently, although we rely on different reasoning, we find that the directed verdict was properly granted and affirm the district court's judgment.