**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DAVID A. STETTLER,
LADEAN STETTLER,

      Plaintiffs-Counter-
      Defendants,

v.

UNITED STATES OF AMERICA,

      Defendant-
      Counter-Claimant,
      Third-Party
      Plaintiff-Appellee,

v.

LANE S. HOWELL,

      Third-Party
      Defendant-Appellant,

JOHN T. DUNLOP,

      Third-Party Defendant.

No. 96-4211
(D.C. No. 94-CV-136-S)
(D. Utah)

**ORDER AND JUDGMENT**[*]

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before PORFILIO and LUCERO, Circuit Judges, and MARTEN,[**] District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

The Internal Revenue Code imposes personal liability upon an officer or employee of a business who fails to remit its employees' withheld income and FICA taxes (known as trust fund taxes) to the treasury. See 26 U.S.C. § 6672.[1] "Specifically, the penalty under § 6672 can be assessed against any officer or

---

[**] The Honorable J. Thomas Marten, District Judge, United States District Court for the District of Kansas, sitting by designation.

[1] Section 6672(a) provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

> Section 6671(b) defines "person" for purposes of § 6672 as "an officer or employee of a corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs."

employee of a corporation who: (1) is under a duty to collect, truthfully account for, and pay over any tax imposed by this title--i.e., a responsible person; and (2) willfully fails to do so." Taylor v. IRS, 69 F.3d 411, 413 (10th Cir. 1995) (quotations omitted).

Taxpayer Lane S. Howell, the president of Northern Outfitters, Inc., (Northern) during two separate periods in 1990, appeals from a district court order granting summary judgment to the government and holding him liable for tax penalties under 26 U.S.C. § 6672. We have jurisdiction under 28 U.S.C. § 158(d). Because we agree with the district court that Howell was a responsible person who willfully failed to pay over the trust fund taxes, and because we find no infirmity in the assessment procedures used, we affirm.

The Internal Revenue Service made § 6672 penalty assessments against David Stettler, John T. Dunlop, and Howell. The assessments were made in connection with the failure to pay over the withholding tax liabilities of Northern for the fourth quarter of 1990. Stettler paid $5000 of the assessment and submitted a refund claim which was denied. Stettler and his wife then filed this refund suit in district court. The government filed counterclaims against Stettler for the unpaid balance of the assessment against him and filed third party complaints against Dunlop and Howell. All claims against Dunlop and Stettler

were disposed of by stipulation. The district court then granted summary judgment in favor of the government and against Howell who appeals.

At all relevant times, John T. Dunlop was Northern's majority shareholder. He was also a majority shareholder in Bonnevest, Inc., a holding company for a number of Dunlop-owned companies. Bonnevest existed to provide management services and financial capitalization for the companies held by it. In 1989, Howell joined Bonnevest as a consultant, helping to manage the various smaller Bonnevest-held companies and providing management, marketing, and financial advice. As of December 1989, Howell was the executive vice president and chief operating officer of Bonnevest. He was also a Bonnevest director and shareholder. In his role as a consultant to Bonnevest, Howell served two terms as president of Northern. During those terms, Howell continued to be paid, not by Northern, but by Bonnevest.

Howell's first term as Northern's president extended from February to May or June of 1990. While there may have been some late payroll tax payments during this period, there were no outstanding tax liabilities when Howell concluded his first term as Northern's president. David Stettler succeeded Howell as president of Northern but left the company in December 1990.

Sometime during January 1991, Howell again assumed the duties of Northern's president.[2] When he took over for this second time, Howell knew that Northern had not paid its payroll taxes for the fourth quarter of 1990.[3] Although there is no evidence of it in the record, Howell testified that Northern had reached an agreement with the IRS to pay back taxes. During Howell's second term as president, payroll taxes were kept current and payments were made toward the arrearage. By April of 1991, however, Northern's financial condition had deteriorated to the point that the company elected to file a Chapter 11 petition. Howell continued as Northern's president until February 1992, at which time he also parted company with Bonnevest.

On appeal, Howell identifies three issues warranting reversal. He contends he was not a "responsible party," he did not "willfully" fail to pay taxes for the fourth quarter of 1990, and that the assessment against him was untimely. Howell bears the burden of establishing either lack of responsibility or

---

[2] The second amended disclosure statement filed pursuant to Northern's eventual bankruptcy states that Howell had been president since January 1, 1991. Howell himself, however, variously testified that he took over in mid to late January.

[3] While the taxes were required to be collected during the fourth quarter of 1990, they were not due to be remitted to the government until January 31, 1991. Howell testified that by the middle of the fourth quarter of 1990, Northern did not have enough money to meet its payroll and pay taxes too. He further testified that no funds were carried over from the fourth quarter of 1990 into 1991 in order to discharge the payroll tax liability.

willfulness.  See Oliver v. United States, 921 F.2d 916, 919 (9th Cir. 1990).

As discussed below, he must also rebut the presumption of validity established

by the assessment evidence presented by the government.  See Taylor, 69 F.3d

at 419.

Howell's first argument, that he was not a responsible person for § 6672

purposes, involves the application of law to fact and is accorded de novo review.

See Bradshaw v. United States, 83 F.3d 1175, 1178 (10th Cir. 1995).  The

responsible person concept has generally been given broad interpretation by this

and other courts, see id.,  and is not a matter of knowledge but one of status, duty,

and authority, see Mazo v. United States, 591 F.2d 1151, 1156 (5th Cir. 1979).

> A person is responsible within the meaning of the statute if that person is required to collect, truthfully account for or pay over any taxes withheld from the wages of a company's employees.  The responsible person generally is, but need not be, a managing officer or employee, and there may be more than one responsible person.  Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees.  Among other things, therefore, a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the "general management and fiscal decisionmaking of the corporation."

Denbo v. United States, 988 F.2d 1029, 1032 (10th Cir. 1993) (quotation and

citations omitted).

Applying these criteria to the facts in the record, we find no error in the district court's conclusion that Howell was a responsible party. During Howell's second term as Northern's president, he had the authority to hire and fire, access to company books and records, and "some" control over company finances. Howell himself testified that he gave guidance to the firm accountant regarding which creditors to pay and had the authority to see that back taxes were paid. On his own authority, he directed the firm accountant not to pay more back taxes than had been laid down in Northern's base operating plan.

In making the responsible person determination, "[t]he crucial inquiry is whether the person had the effective power to pay the taxes--that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Taylor, 69 F.3d at 416 (quotation omitted). By his own admissions, Howell had this power and was therefore a responsible person.

Howell argues that he had no day-to-day hand in running Northern's affairs during his second term as president. As we explained in Muck v. United States, 3 F.3d 1378, 1380-81 (10th Cir. 1993), "a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the general management and fiscal decisionmaking of the corporation. The existence of such authority, irrespective of whether that authority is actually exercised, is determinative." (quotations and citations omitted).

Nor does it help Howell that there may have been a payment plan agreed upon between the IRS and Northern. Such a plan would only absolve Howell of his personal liability if it specifically provided that he, individually, would be held harmless from the § 6672 penalty. See id. at 1382. Howell has introduced no evidence to that effect.

Finally, it is irrelevant that Howell may not have been a responsible party during the fourth quarter of 1990 when the taxes were to have been collected. The Supreme Court has construed the obligations of § 6672 in the disjunctive, refusing to limit the scope of § 6672 liability only to those persons who performed all three statutory duties: collecting, accounting for, and paying over. See Slodov v. United States, 436 U.S. 238, 246-50 (1978). Indeed, the petitioner in Slodov did not acquire the delinquent businesses until January 31, 1969, but was still held to be a responsible person for taxes withheld prior to that date. See id. at 241, 251.

Mr. Howell next argues that, even if he was a responsible person, he did not willfully fail to pay over payroll taxes. Willfulness is a question of fact. See Bradshaw, 83 F.3d at 1183. "We view the evidence in the light most favorable to the Government and we will not overturn the findings of the District Court unless they are clearly erroneous." Burden v. United States, 486 F.2d 302, 304 (10th Cir. 1973). If a person has made a "voluntary, conscious and

intentional decision to prefer other creditors over the Government," see id. at 304, he or she has acted willfully for purposes of the statute. No bad motive is required. Id.

The evidence establishes that Howell knew at the time he began his second term as president of Northern that the payroll taxes for the fourth quarter of 1990 had not been paid. He also knew, indeed he directed, that other creditors be paid while these outstanding taxes remained unpaid. "A responsible person's use of funds, or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax, is willful conduct within the scope of Section 6672." Garsky v. United States, 600 F.2d 86, 91 (7th Cir. 1979); see also Denbo, 988 F.2d at 1033-34.

Howell argues against his result, citing Slodov, 436 U.S. 238. Slodov, however, is distinguishable from this case. In Slodov, the taxpayer purchased the stock and assumed the management of three businesses on January 31, 1969. The taxpayer knew that withholding taxes due on that date had not been paid, but he was assured by the sellers that sufficient funds remained in various business bank accounts to cover the tax liability. This was not the case. In fact, "at the time that petitioner assumed control, the corporations had no liquid assets, and whatever trust-fund taxes had been collected prior to petitioner's assumption of control had been dissipated." Id. at 242.

Dr. Slodov deposited personal funds into the businesses and, during the next few months, the corporations acquired sufficient funds to pay the delinquent taxes. Instead of discharging the tax debt, however, petitioner used the funds to pay normal operating expenses. Under these circumstances the Court held that, "if new management of a corporation assumes control *when a delinquency for trust fund taxes already exists* and the withheld taxes have already been dissipated by prior management, the new management's use of after-acquired revenues to satisfy creditors other than the United States does not make it personally liable for a section 6672 penalty." Denbo, 988 F.2d at 1035 (emphasis added; summarizing holding in Slodov).

Several facts distinguish this case from Slodov. First, when Howell took over as president of Northern, no delinquency for trust fund taxes existed. The taxes were not due until January 31, 1991; Howell assumed control before that date. Howell was thus not "new management" at a time that a tax delinquency already existed.

Nor was Northern without liquid assets with which to pay the taxes. Northern's balance sheet as of December 31, 1990, reveals a cash balance of $27,835.01. Cash on hand as of January 31, 1991, was $11,432.94. During January 1991, $93,000 was deposited in Northern's checking account. It is undisputed that this latter amount would have been enough to discharge the

fourth quarter 1990 tax liability. Contrary to Howell's characterization, these were not "after-acquired" funds vis-a-vis Northern. These funds were acquired by Northern and available to it in time to avoid delinquency. The funds were not acquired after the delinquency arose. Unlike Dr. Slodov, Howell did not inherit a payroll tax *fait accompli* when he resumed duties as Northern's president. When he took over, Howell knew of the outstanding tax liability and had access to sufficient corporate funds to pay it in a timely fashion.

Had Howell assumed control after January 31, 1991, and had Northern been without any funds to satisfy the tax liability, Howell would be in a stronger position to claim the benefit of Slodov. Because neither of those scenarios were the case here, Slodov does not apply.

Howell finally argues that no timely assessment was made against him. The evidence is to the contrary. The record contains a copy of a certificate of assessments and payments (Form 4340). This form provided Howell with all of the information required under Treasury Regulation § 303.6203-1 and indicates that the date of assessment, or the "23c date," was February 9, 1994.[4] It therefore is presumptive proof that the assessment was valid. See Taylor, 69 F.3d at 419. In addition to Form 4340, the record also contains a copy of the summary record

_____

[4] As the government explains in its brief at p. 36 n.15, the date of an assessment is commonly referred to as a 23c date because of the name of the form used in making assessments.

of assessments signed by an assessment officer on February 9, 1994. Howell has failed to advance any evidence in rebuttal.

The judgment of the United States District Court for the District of Utah is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge