**Scott DeGRAFF, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 05 C 3984.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 21, 2007.

Richard Keith Hellerman, Robert E. McKenzie, Kathleen Marie Lach, Arnstein & Lehr, Chicago, IL, for Plaintiff.

Barbara E. Seaman, Nathaniel J. Dorfman, United States Department of Justice, Washington, DC, Jack Donatelli, United States Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Scott DeGraff filed a complaint against defendant United States of America ("the government") for improper assessment of a civil tax penalty under Internal Revenue Code ("I.R.C.") § 6672. The parties filed cross-motions for summary judgment. For the reasons set out below, the court grants defendant's motion and denies plaintiff's motion.

### FACTS [1]

In 1989, the DeGraff family decided to open Winklestein's Delicatessen ("Winklestein's") at 848 N. Orleans in Chicago, Illinois. Plaintiff, an attorney, assisted his mother, Suzanne DeGraff, in the opening of the restaurant. On February 21, 1990, Winklestein's Limited Partnership ("Winklestein's LP") was formed; Winklestein's LP owned and operated the restaurant. Real Food, Inc. ("Real Food"), an Illinois corporation formed on February 20, 1990, was the only general partner of Winklestein's LP. Plaintiff was named as president of Real Food and his mother was named as secretary. Plaintiff signed the Certificate of Limited Partnership for Winklestein's LP as president of Real Food as well as the Certificate of Cancellation of the Certificate of Limited Partnership. Real Food's income tax return for the years 1991 through 1994 listed its address as plaintiff's home address, and plaintiff filled out and signed the annual reports for Real Food every year but 1995.

---

1. Unless otherwise noted, the facts are taken from the parties' L.R. 56.1 statements and attached exhibits.

Plaintiff was listed as director on the 1995 annual report. Plaintiff was also listed as the "tax matters person" ("TMP") on Real Food's 1991–1994 tax returns, and Real Food was listed as TMP on Winklestein's 1995 tax form, which plaintiff signed. Plaintiff solicited investors for Winkleman's LP and put together a prospectus to provide to each potential investor.

Other than an initial capital contribution of $5000, Real Food's only asset was its 90% interest in Winkleman's LP. Originally, Suzanne owned 55% of Real Food's stock and plaintiff owned 45%; after 1992, Suzanne owned 55%, plaintiff owned 30%, and Steven (plaintiff's brother and Suzanne's son) owned 15%. Steven, an attorney, testified at his deposition that Real Foods did not hold formal shareholders' meetings, but that he and plaintiff discussed the restaurant's financing whenever they were with their mother.

Plaintiff and his mother were authorized signatories on the business's bank accounts. Plaintiff was the primary signatory for the restaurant's checking account, although plaintiff did not routinely sign corporate checks on behalf of Winklestein's; he estimates he signed no more than ten to fifteen checks on behalf of the restaurant. Only plaintiff could sign documents such as loan documents and leases on behalf of the restaurant. On February 23, 1990, plaintiff signed a lease for the restaurant on behalf of Real Food for the period of May 15, 1990 to June 30, 1995. On April 30, 1991, plaintiff, as President of Real Food, signed a U.S. Small Business Administration ("SBA") application for a loan of $400,000. With that application, plaintiff included a "Description of Business" that stated that the restaurant was a "family affair." On June 7, 1991, plaintiff, as President of Real Food and on behalf of Winklestein's as its General Partner, was the sole signer of a loan from the SBA for $400,000.

According to plaintiff, he was involved in the business only during its formation; he was otherwise occupied with his legal career and starting his own nightclub business, and he spent little time participating in the running of the restaurant. Plaintiff maintains that his mother operated the business and controlled all financial and administrative functions. Specifically, Suzanne DeGraff: managed, hired, and fired employees; instructed and trained employees; counted the cash taken in by the restaurant and prepared daily receipts; kept a running balance of checking account funds in the checkbook register; paid or authorized the payment of bills for the restaurant; authorized the payment of payroll checks; had the responsibility for making employment tax deposits; and opened the mail and gave invoices to the bookkeeper.

Plaintiff signed the restaurant's 941 quarterly tax returns for the last quarter of 1992 and the first two quarters of 1993. Each return, prepared by the restaurant's bookkeeper, showed that taxes were outstanding. No payment for the outstanding taxes was included with any return signed by plaintiff. Plaintiff received a letter from the Internal Revenue Service ("IRS") dated November 6, 1993, stating he was potentially liable under I.R.C. § 6672 for taxes owed by Winklestein's LP. Plaintiff asked his mother why she had not paid the taxes owed, and his mother told him that the restaurant was not doing well financially. On December 8, 1993, the IRS served a Notice of Levy on Columbia National Bank. The next day, Columbia National Bank sent to Winklestein's a copy of a "Debit, Substitute Document" with a note stating that the bank had sent the IRS a cashier's check in the amount of $2,034.55.

On September 26, 1994, plaintiff signed a lease with Mid–City Realty Corporation on behalf of Winklestein's LP, which increased the restaurant's monthly rent payments from $3,500 to $11,500 and required a $25,000 security deposit. Plaintiff denies that he signed the document in an individual capacity. Plaintiff and Suzanne DeGraff were personal guarantors of the lease. On September 23, 1997, Mid–City Realty Corp. filed a complaint against plaintiff and Suzanne DeGraff for breach of contract for failure to pay rent in June 1995. The restaurant also paid contractors $30,000 for construction work required for the new space.

Winklestein's generated losses while it was in business; 90% of those losses flowed to Real Food.. Plaintiff reported his portion of the losses as non-passive losses on his tax returns for 1991–95. The restaurant did, however, have revenues of more than $450,000 before it ceased to operate in 1995. Several lawsuits were filed against the restaurant after its closing, and plaintiff paid settlements in each case.

Winklestein's defaulted on the payment of federal FICA and withholding taxes (tax type 941) as required by 26 U.S.C. §§ 3101, 3102, 3111, and 3402 for the last quarter of 1991, all four quarters of 1992, and three quarters of 1993. On or around March 1, 1995, the IRS issued a proposed civil penalty, or "trust fund recovery penalty," against plaintiff in the amount of $89,040.73. That penalty represented the taxes withheld by Winklestein's LP from the wages of its employees. On March 16, 1995, the IRS sent plaintiff a statutory notice of the balance due. The IRS also gave plaintiff a letter stating that the statute of limitations with respect to the trust fund recovery penalty expired on April 15, 1995. Suzanne and Melvin DeGraff were also assessed the trust fund recovery penalty.

On or about July 15, 2003, plaintiff paid $500.00 to the IRS to be applied to the civil penalty assessed against him. Also on or about July 15, 2003, plaintiff filed a claim for a refund of the $500.00 he paid to the IRS, as well as for abatement of the penalty assessed against him for $89,040.73. On or about April 15, 2004, the IRS applied plaintiff's federal income tax refund for 2003 in the amount of $114,377.00 toward the civil penalty assessed against him. On or about July 19, 2004, the IRS applied plaintiff's federal income tax refund for 2000 in the amount of $35,463.44 toward the civil penalty assessed against him.

Plaintiff then filed the instant lawsuit on July 19, 2005, arguing that the assessment of the civil penalty against him was improper because he is not a responsible party and his conduct was not willful; additionally, there was "reasonable cause" for the corporation's failure to pay corporate withholding taxes. Plaintiff argues that he is entitled to a refund of $150,340.54 (the applied refunds of $114,377.00 and $35,463.54 and his payment of $500.00) and abatement of the original civil penalty of $89,040.73, plus interest and attorney's fees.

### DISCUSSION

The parties have filed cross-motions for summary judgment. Under Fed.R.Civ.P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994).

I.R.C. §§ 3102(a) and 3402(a) require employers to withhold income taxes, Federal Insurance Contribution Act ("FICA") taxes, and medicare taxes from the wages of employees and remit the amounts withheld to the IRS. Pursuant to I.R.C. § 7501, these withheld amounts constitute a special fund held in trust for the benefit of the United States. *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *United States v. Kim*, 111 F.3d 1351, 1356 (7th Cir.1997). Under I.R.C. 6672, an employer may not withhold these taxes from employees' paychecks without paying them over to the federal government:

> (a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax...shall...be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

This section imposes liability on every person who willfully fails to collect, account for, or pay over the withheld taxes. *Slodov*, 436 U.S. at 247, 250, 98 S.Ct. 1778. I.R.C. § 6671 defines "person" as anyone under a duty to perform; § 6671(b) defines "person" to include "an officer or employee of the corporation...who as such officer [or] employee...is under a duty to perform the act in respect of which the violation occurs." When a person required to collect, account for, or pay over withholding taxes (i.e., a "responsible person") willfully fails to do so, he or she is liable for a penalty equal to the amount of the unpaid taxes. *Kim*, 111 F.3d at 1357.

*Responsible Person*

■■■ A party must therefore both be a "responsible person" and act "willfully" to be found liable under I.R.C. § 6672. A person is "responsible" under I.R.C. § 6672 if he has "significant control or authority over an enterprise's finances or general decisionmaking." *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987). "[T]his duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds." *Monday v. United States*, 421 F.2d 1210, 1214–15 (7th Cir.1970).[2]

Plaintiff is the president of Real Food, Inc., the general partner and 90% shareholder of Winklestein's LP, and he was a 45% shareholder of Real Food stock until he transferred a percentage of his shares to his brother. Despite plaintiff's protestations, he was not president in name only. Plaintiff was the only party who could sign for loans or leases, which he did on multiple occasions. He signed for the restaurant's first 5–year lease in 1990, which

---

**2.** The fact that plaintiff's mother and father were also assessed the penalty has no bearing on plaintiff's own liability. Plaintiff's status as a "responsible person" does not mean he is the only responsible person; "more than one individual can be a responsible person within the meaning of the statute." *United States v. Running*, 7 F.3d 1293, 1297 (7th Cir.1993).

obligated the restaurant to make monthly rent payments of $3,500. He signed the second lease in 1994, which required monthly payments of $11,500 and a security deposit of $25,000. He created a prospectus and solicited investors for the restaurant. He was the primary signatory on the restaurant's checking account, and he signed at least ten to fifteen corporate checks on behalf of the restaurant. Plaintiff alone signed for an SBA loan for the restaurant in the amount of $400,000. Equally significant is how involved plaintiff was with the restaurant's taxes. Real Food's tax returns listed plaintiff's home address as the corporation's address, and they listed plaintiff as the "tax matters person." Plaintiff also signed Real Food's annual reports for 1990 through 1994. Further, plaintiff signed Winkleman's 941 quarterly tax returns for three of the seven quarters for which the penalty has been assessed against him.

Based on the numerous actions plaintiff took regarding the restaurant's finances, the court concludes that plaintiff had sufficient authority to cause Winkleman's to fail to pay the withheld taxes to the IRS. Plaintiff is therefore a "responsible person" for purposes of I.R.C. § 6672.

*Willfulness*

▮ In addition to requiring that the party in question be a "responsible person," I.R.C. § 6672 also requires that the responsible party have acted willfully in failing to pay the taxes. A responsible person acts willfully if he permits the corporation's funds to be paid to creditors when he knows that the corporation has not paid to the government the withholding taxes it owes. *Garsky v. United States*, 600 F.2d 86, 91 (7th Cir.1979). Further, a responsible person need not take an active role in paying the creditors; he acts willfully "if he (1) clearly ought to have known that (2) there was a grave risk

that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Wright v. United States*, 809 F.2d 425, 427 (7th Cir.1987).

In the instant case, plaintiff was well aware that the corporation had not paid withholding taxes it owed to the government. Plaintiff signed the corporation's 941 tax returns for three quarters (the last in 1992 and the first two in 1993), when Real Food was listed as TMP for Winklestein's. For each of those quarters, the return indicated that the corporation owed withholding taxes, but at no point did the corporation remit payment to the government. In November 1993, plaintiff received a letter from the IRS indicating that the corporation owed payment, and once again he failed to pay the taxes owed to the government. Plaintiff spoke to his mother about the corporation's failure to pay taxes, and his mother admitted to him that she had not paid the taxes because of the restaurant's financial condition. Further, after receiving the letter from the IRS, and after signing the three 941 quarterly tax returns, plaintiff used the restaurant's revenue to enter into a more expensive lease, pay a down payment, and pay contractors for construction work on the new space.

The uncontested facts therefore demonstrate that plaintiff knew that the business of which he was president owed withholding taxes and used available revenue to pay creditors instead of remitting payment to the government. Consequently, the court finds that plaintiff is a responsible person who acted willfully in failing to pay withholding taxes to the government. Winklestein's might have indeed been a "family business" in which plaintiff's mother played the major role, but plaintiff cannot dispute the fact that he was an active, responsible member of that family who could have and should have ensured that

the business remitted to the government the taxes it collected from its employees and owed to the United States. The government's motion for summary judgment is granted and plaintiff's cross-motion is denied.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion. Judgment is entered for defendant United States of America and against plaintiff Scott DeGraff.